(Nos. 75100, 75159, 75168 cons.—

SUSAN HOEM, Appellee and Cross-Appellant, v. MICHAEL J. ZIA, M.D., *et al.*, Appellants and Cross-Appellees.

*Opinion filed March 24, 1994.—Rehearing denied May 27, 1994.*

Richard F. Record, Jr., of Craig & Craig, of Mattoon, for appellant and cross-appellee J. Steven Arnold.

Kehart, Shafter, Hughes & Webber, P.C., of Decatur (Michael J. Kehart and Albert G. Webber, of counsel), for appellants and cross-appellees Michael J. Zia and Central Illinois Lung Internists Associates, S.C.

John E. Fick, of Samuels, Miller, Schroeder, Jackson & Sly, of Decatur, for appellant and cross-appellee Decatur Memorial Hospital.

Alexandra de Saint Phalle, of Londrigan, Potter & Randle, P.C., of Springfield, for appellee and cross-appellant.

JUSTICE HEIPLE delivered the opinion of the court:

In March 1990, plaintiff, Susan Hoem, filed this medical malpractice action against defendants, Dr. Michael Zia, Dr. J. Steven Arnold, Decatur Memorial Hospital, and Central Illinois Lung Internists Associates. In her complaint, plaintiff alleged that defendants failed to diagnose and prevent the impending heart attack of her husband, Richard Hoem, that resulted in his death in November 1988. After a trial, the jury rendered a verdict for defendants.

On appeal, plaintiff argued that the trial court (1) erred by admitting testimony barred by the Dead-Man's Act (Ill. Rev. Stat. 1991, ch. 110, par. 8—201); (2) improperly limited plaintiff's rebuttal witness' testimony; (3) failed to instruct the jury that the negligence of a subsequent party does not exonerate a prior act of negligence; (4) should have granted summary judgment for plaintiff on the issue of whether Dr. Arnold was an agent of the hospital; (5) erred in several evidentiary rulings; and (6) erroneously denied plaintiff's motion for judgment notwithstanding the verdict. The appellate court reversed and remanded for a new trial. 239 Ill. App. 3d 601.

We allowed defendants' petition for leave to appeal (134 Ill. 2d R. 315), and now affirm the judgment of the appellate court, although for reasons different from those stated by the appellate court.

## I. BACKGROUND

Richard Hoem underwent a physical examination in March 1988. An electrocardiogram test (EKG) done as a part of this examination revealed no signs of heart problems.

During the summer of that year, Hoem began to develop problems with his endurance. Thinking that his problems might be related to a previous lung condition, Hoem consulted Dr. Zia, a specialist in pulmonology. Dr. Zia had last treated Hoem in 1984 when Hoem failed a work-related lung test.

On October 31, 1988, Dr. Zia administered a series of tests designed to detect lung problems. He also scheduled Hoem to undergo a cardiopulmonary stress test on November 11, 1988, to measure lung capacity and fitness.

Because Dr. Zia was on vacation on November 11, 1988, his partner, Dr. Arnold, administered the test. During the test, Hoem exercised on a stationary cycle while an EKG monitored his heart rate as he breathed into a tube that monitored his lung capacity, strength, and endurance. The test also monitored blood pressure.

On November 21, Dr. Arnold notified Hoem that he had found a "blockage" on the test and had scheduled Hoem to meet with a cardiologist, Dr. Krishan Patel, a week later, on November 29, 1988. The day prior to that meeting, however, Hoem collapsed after walking up a flight of stairs and later died.

Plaintiff then brought suit against defendants, Dr. Michael Zia, Dr. J. Steven Arnold, Decatur Memorial Hospital, and Central Illinois Lung Internists Associates. Plaintiff's principal allegation of negligence was that Drs. Zia and Arnold had failed to recognize, and treat on an emergency basis, Hoem's cardiac condition.

During plaintiff's case in chief, she presented the expert testimony of Dr. Dan Fintel, a cardiologist. Dr. Fintel testified that the EKG and medical charts showed

clear signs of a prior heart attack and clear warnings of an impending heart attack. Dr. Fintel testified that when Hoem visited Dr. Zia on October 31, 1988, Hoem was describing angina to Dr. Zia, which is an undisputed symptom of heart disease. He testified that based upon the information that Dr. Zia recorded in his office notes, Dr. Zia should have recognized Hoem's complaints as angina, and hence initiated a program of cardiac diagnosis and treatment.

Defendants responded by calling themselves and three other doctors as medical experts: Dr. Patel (the cardiologist whom Hoem was scheduled to see), Dr. William Buckingham (a board-certified internist and pulmonologist), and Dr. Patrick Sullivan (a board-certified internist).

Over plaintiff's Dead-Man's Act objection, Dr. Zia testified concerning his examination of Hoem on October 31, 1988. Dr. Zia stated that the pain which Hoem described to him was not consistent with angina, but rather was consistent with musculoskeletal pain. Therefore, Dr. Zia did not suspect Hoem was suffering from heart disease, and did not initiate treatment for it.

Among other things, Dr. Patel testified that the medical results from Hoem's test did not present an urgent medical condition. He added that, if he had read the charts and results from Hoem's test immediately after Hoem took the test, he would not have done anything differently than Dr. Arnold had done.

Dr. Buckingham and both defendants testified that although Dr. Fintel may know the standard of care for a cardiologist, he did not testify to the applicable standard of care for pulmonologists. All three testified that although cardiologists might notice subtle, but life-threatening, heart problems from Hoem's medical data, pulmonologists would not notice these subtle problems. Dr. Sullivan and both defendants testified essentially to the same standard of care regarding internists.

In rebuttal, plaintiff attempted to present Dr. Robert Schoene, a board-certified pulmonologist, to testify that Dr. Fintel had accurately stated the applicable standard of care for pulmonologists. The trial court, however, restricted the extent to which plaintiff could do so under the general theory that plaintiff could have presented Dr. Schoene in her case in chief, but failed to do so.

On appeal, plaintiff argued that the trial court (1) erred by admitting testimony barred by the Dead-Man's Act (Ill. Rev. Stat. 1991, ch. 110, par. 8—201); (2) improperly limited plaintiff's rebuttal witness' testimony; (3) failed to instruct the jury that the negligence of a subsequent party does not exonerate a prior act of negligence; (4) should have granted summary judgment for plaintiff on the issue of whether Dr. Arnold was an agent of the hospital; (5) erred in several evidentiary rulings; and (6) erroneously denied plaintiff's motion for judgment notwithstanding the verdict.

The appellate court reversed and remanded. That court found that the trial court erred in allowing Dr. Zia to testify to what Hoem told him during Hoem's visit because such testimony violated the Dead-Man's Act (Ill. Rev. Stat. '1991, ch. 110, par. 8—201). The appellate court further held that the trial court had erroneously restricted the rebuttal testimony of Dr. Schoene. The appellate court found no error in the last four claims of error by plaintiff.

## II. APPEAL TO THIS COURT

### A. The Dead-Man's Act

On appeal to this court, defendants first argue that the trial court was correct in allowing Dr. Zia's testimony concerning his examination of Richard Hoem. Defendants submit that this testimony was permissible under the Dead-Man's Act because plaintiff waived the bar of the Act by earlier eliciting testimony from her

expert witness, Dr. Fintel, about the meaning of Dr. Zia's office notes concerning the October 31, 1988, medical examination and introducing the notes themselves into evidence.

The first office note, prepared October 31, 1988, in Dr. Zia's handwriting, states:

"10/31/88 Aug — C spine SX — SOB
                  Now — Tight across
                  chest — c exercise
                  No palpitations — or wheeze — "

The other note in question reads as follows:

"Patient comes for follow-up today. He is complaining of pain and tightness in the upper chest area. This occurs primarily with exertion and does seem to radiate down his arms. He was initially evaluated by Dr. Hubbard for cervical arthritis and arthralgias and this has not been a problem recently. He is having no fevers, chills, sweats, palpitations, heart irregularity, wheezing, sputum production or other complaints.

On exam today he has blood pressure 144/100, states this is frequently high on visits to the doctor but is otherwise normal. He does not have any wheezing. The diaphragms appear to move well bilaterally. Cardiac exam is entirely normal. He has no peripheral edema or peripheral findings.

Based on the above we have ordered a chest x-ray and asked x-ray to check for diaphragmatic motion. He has had previous left pleural thickening on a somewhat idiopathic basis. We have also ordered a complete pulmonary function with methacholine challenge and possible cardiopulmonary stress test depending on the above. We will call him after the above results and schedule any additional testing that is necessary."

Based on the information found in these notes, Dr. Fintel, plaintiff's expert in her case in chief, testified that because Hoem complained of chest pains and tightness, Dr. Zia should have explored possible heart problems.

During defendants' case in chief, Dr. Zia testified that Hoem did not complain of chest pain during this October 1988 visit. Dr. Zia testified as follows:

"[Defense Counsel]: I think I had asked you, Doctor, did Mr. Hoem say the reason he was back?

[Dr. Zia]: Yes, he did.

[Defense Counsel]: What did he say?

[Dr. Zia]: As Mrs. Hoem had mentioned earlier, he had come back for a follow up on his lung condition and his shortness of breath.

[Defense Counsel]: What did Mr. Hoem tell you by way of history, Doctor?

[Dr. Zia]: His symptoms he mentioned began about August and there was a C spine symptom; that was my abbreviated way of describing it. Pain which was C spine pain, in the back of the neck, and tightness in the posterior thorax or back of the chest upper chest, just below the neck. That symptom did seem to radiate into his arms, as many people have described. He did notice it more with exertion ***. He said that this symptom had already been evaluated, had initially been evaluated by Dr. Hubbard because someone had told him he had cervical spine muscular spasm symptoms, that medicine being Flexeril as documented in our medication list. And he said that that worked and that had not been a problem recently. The chest, posterior chest tightness, neck pain going down his arm[,] had not been a problem recently."

The appellate court found that this testimony was improperly admitted, in violation of the Dead-Man's Act.

We disagree. The Dead-Man's Act provides:

"In the trial of any action in which any party sues or defends as the representative of a deceased person ***, no adverse party or person directly interested in the action shall be allowed to testify on his or her own behalf to any conversation with the deceased *** or to any event which took place in the presence of the deceased ***, except in the following instances:

(a) If any person testifies on behalf of the representative to any conversation with the deceased *** or to any event which took place in the presence of the deceased ***, any adverse party or interested person, if otherwise competent, may testify concerning the same conversation or event." (Ill. Rev. Stat. 1991, ch. 110, par. 8—201.)

We find that the testimony of Dr. Fintel and the introduction of Dr. Zia's office notes opened the door to Dr. Zia's testimony.

During Dr. Fintel's direct examination, the following took place:

"[Plaintiff's counsel]: Doctor, did you formulate any opinions to a reasonable degree of medical certainty based upon your review of Plaintiff's Exhibit A, pages 1, and 37, as well as based on the results of the x-ray and other tests that were notations for the day of October 31, 1988?

[Dr. Fintel]: Yes, I have.

[Plaintiff's counsel]: Doctor, what is it in those records that leads you to express the opinion that Mr. Hoem had exertional chest pain?

[Dr. Fintel]: I base this on reading what is a very well-documented and legible typed note, that which we all see on our right. Looking at the second line where I read, 'he,' referred to Mr. Hoem, 'is complaining of pain and tightness in the upper chest area. This occurs primarily with exertion and does seem to radiate down his arms.'

That to me suggests that Dr. Zia recognized that the principal reason why the patient came to the office for evaluation was for evaluation and treatment of this problem."

From these statements, it may be argued that Dr. Fintel is merely interpreting the note. He is, however, doing more than that. Rather than merely translating Dr. Zia's note for the benefit of the jury, Dr. Fintel has put his gloss on the notes. Taking Dr. Fintel's statements together, he is clearly insinuating that Hoem visited Dr. Zia specifically for the treatment of a heart related problem. Under these facts, we find that Dr. Fintel's testimony falls within subsection (a) of the Act (Ill. Rev. Stat. 1991, ch. 110, par. 8—201(a)) and that plaintiff has waived the bar of the Dead-Man's Act.

The purpose of the Dead-Man's Act is to remove the temptation of the survivor to a transaction to testify falsely and to equalize the positions of the parties in regard to the giving of testimony. (M. Graham, Cleary &

Graham's Handbook of Illinois Evidence § 606.1, at 314-15 (5th ed. 1990).) In this case, allowing the representative of the deceased to introduce her version of why Hoem went to Dr. Zia, without giving an equal opportunity to Dr. Zia, would not advance the policy behind the Act. Under these circumstances, we find it fundamentally unfair to deny Dr. Zia an opportunity to explain his view of what happened. Left unchallenged, Dr. Fintel's comments would have remained with the jury as the only testimony regarding the conversation between Dr. Zia and Hoem.

### B. The Scope of Dr. Schoene's Testimony

Defendants next contend that the appellate court improperly held that the trial court had erroneously restricted the rebuttal testimony of Dr. Schoene. We disagree and affirm the appellate court decision.

Originally, plaintiff only named Dr. Fintel as her expert. In August 1991, defendants filed a motion for summary judgment based on their claim that because plaintiff's only named expert, Dr. Fintel, was a cardiologist, he could establish neither the standard of care for a pulmonologist nor any deviation therefrom. Thus, in her September 1991 response to defendants' summary judgment motion, filed two months before the November 1991 trial, plaintiff asked the trial court to add Dr. Schoene to the list she previously disclosed under Illinois Supreme Court Rule 220 (134 Ill. 2d R. 220) of expert witnesses she intended to call in her case in chief.

The trial court denied defendants' motion for summary judgment and held that Dr. Fintel's testimony could suffice to establish the appropriate standard of care and any deviation therefrom because Dr. Fintel and defendants were all board-certified internists, and because of the close relation between the fields of pulmonology and cardiology and Dr. Fintel's experience in both. The court, however, refused to the permit Dr.

Schoene to testify in plaintiff's case in chief because plaintiff did not originally disclose him as an expert in her case in chief. The court explained that the ensuing delays from allowing plaintiff to add Dr. Schoene as an expert in her case in chief would be unnecessarily burdensome.

At trial, plaintiff relied on Dr. Fintel to establish the standard of care in her case in chief. After plaintiff rested, the trial court denied defendants' motion for a directed verdict, thus indicating that it found Dr. Fintel's testimony legally sufficient. Defendants then countered in their case in chief with testimony to the effect that although Dr. Fintel probably correctly stated the applicable standard of care for cardiologists, he did not correctly state the applicable standard of care for pulmonologists. They further testified that the medical records and information that Dr. Zia received would not have signaled Hoem's impending heart condition to a pulmonologist, especially because pulmonologists are trained to notice mostly lung conditions.

Plaintiff then offered Dr. Schoene in rebuttal to testify that Dr. Fintel did correctly state the applicable standard of care for pulmonologists, and that a pulmonologist such as himself would have noticed Hoem's impending heart condition and sent Hoem immediately to obtain treatment for it. Defendants object to Dr. Schoene's testifying in rebuttal, and the trial court sustained that objection. The trial court held that Dr. Schoene could not testify to the general standard of care for pulmonologists because plaintiff should have presented that evidence in her case in chief.

On appeal, the appellate court found that the trial court erred in restricting Dr. Schoene's testimony in rebuttal. That court found that defendants' experts had seriously impeached Dr. Fintel and that it was an abuse of discretion to prohibit the plaintiff from rebutting this testimony.

On appeal to this court, defendants argue that the trial court properly restricted the scope of Dr. Schoene's testimony. They maintain that plaintiff committed a fundamental tactical error in the preparation of her case for trial by retaining an inappropriate expert and should not be allowed to rectify this mistake through rebuttal.

We cannot agree with this tactical-error analysis. To adopt the defendants' view on this issue would be tantamount to requiring a plaintiff to anticipate and present all conceivably relevant evidence in her case in chief, because, otherwise, she would be barred from presenting that evidence in rebuttal in the event defendants presented evidence in their case in chief that plaintiff needed to counter. As stated by the appellate court in this case, such a rule would be "antithetical to the concerns expressed by all involved in our civil justice system about its present costs, wastes, and delays." 239 Ill. App. 3d at 619.

Defendants further argue that Dr. Schoene's testimony would not be proper rebuttal evidence. They argue that there is scant evidence from the record which would indicate that defendants had impeached Dr. Fintel on the standard of care issue.

Contrary to defendants' contention, there is evidence in the record indicating that defendants had impeached Dr. Fintel. Specifically, defendants' expert, Dr. Buckingham, testified that from his perspective as a pulmonologist, the stress test results did not require an immediate referral to a cardiologist. When asked whether he had any disagreement in whole or in part with Dr. Fintel's statements on that aspect of the case, Dr. Buckingham responded:

> "My disagreement was in whole. I looked at the same cardiogram. Dr. Fintel is a cardiologist, and I'm a pulmonologist. I looked at the cardiogram-tracings and did not

see anything I as a pulmonologist would identify as abnormalities."

Dr. Buckingham further stated:

"As I say, you can have as many interpretations as you have interpreters, and they may not always agree, but certainly a cardiologist might look at an electrocardiographic tracing differently than a pulmonologist would, but I don't think the pulmonologist could be held to the standard of the cardiologist because he's a pulmonologist."

This testimony could have left the jury with the impression that plaintiff's expert had expressed an inappropriate standard of care with regard to reading the test results. Given these circumstances, we find that plaintiff was entitled to have Dr. Schoene testify on rebuttal.

### III. PLAINTIFF'S CROSS-APPEAL

Aside from the two issues raised by defendants, plaintiff raises several issues on cross-appeal with regard to certain adverse rulings by the appellate court. We find, however, that these issues have been fully covered by the well-considered opinion of the appellate court, and we agree with and adopt the reasoning and findings stated therein.

### IV. CONCLUSION

In conclusion, we find that the trial court properly admitted the testimony of Dr. Zia over plaintiff's Dead-Man's Act objection but find that the trial court abused its discretion in restricting the rebuttal testimony of Dr. Schoene. The judgment of the appellate court is affirmed.

*Affirmed.*