OPINION OF THE COURT
Joseph F. Lisa, J.
The defendants in this "AIDS Phobia” matter seek an order *442 compelling the plaintiff, Lillian Brown (hereinafter the plaintiff), to undergo "a blood test to determine the presence of AIDS” on the grounds, inter alia, "if, based on currently reliable testing it can be shown that this plaintiff is not at risk of developing Aids, then there can be no rational basis for the [her] claim.”
The plaintiffs oppose this motion and while not clearly designated as such, cross-move for a protective order on the grounds, inter alia, that "the plaintiff does not state nor does she want to know that she has an HIV virus or Aids. She maintains that as a result of the negligence of the defendants, she has suffered a psychological injury to wit: Post Traumatic Stress Disorder”.
In addition, her attorney argues that to force the plaintiff to undergo an "AIDS” test would be severely damaging to her psychological health.
In support of this argument plaintiffs’ counsel cites the report of her treating psychologist, Dr. Richard Perrotto, whose report states, inter alia:
"She has resisted further HIV testing for fear that if she is HIV positive, she would not be able to cope with it and would just give up. Moreover, her experience tells her that an HIV negative test result would not prove that she was not infected. She recalls many cases of Aids patients who tested negative several times before finally testing positive much later. Although she recognizes intellectually, that she may be infected, not knowing her HIV status allows her to believe that she is not. In this way she is able to avoid the issue as much as possible under the circumstances and continue to work, support her family, and care for her children.
"mbs. garrett-brown has been traumatized by a life-threatening incident beyond the realms of ordinary human experience. This incident has changed her life in more ways than one. Despite the fact that she has been able to adjust, with great difficulty to her situation, she remains depressed, but actively fighting it. Her symptoms are consistent with a DSM-III-R diagnosis of 309.89 Post-traumatic Stress Disorder. I recommend that Mrs. Garrett-Brown continue in supportive psychotherapy. [And his own observation that her] fear is so encompassing, that when mrs. brown was asked to review the case with your affirmant, her fear of this whole event was so powerful that she could not return the phone calls. When an appointment was finally made, she was unable to appear at the office.”
*443 After a review of all of the papers submitted on this matter and due deliberation thereto it is hereby directed that the defendants’ motion seeking an order directing the plaintiff to undergo a blood test for HIV/AIDS is denied. There is no compelling need for such a test since implicit in a claim based upon "AIDS Phobia” or fear of contracting HIV/AIDS with a resulting psychological injury, posttraumatic stress disorder is plaintiff’s concession that there is no definitive evidence she ever contracted HIV/AIDS infection or illness.
The cause of action for "AIDS Phobia” or "fear of having contracted HIV/AIDS”, as such is pleaded here, is based on a specific exposure to HIV infection; but, the transmission of infection did not, in fact, occur. (Castro v New York Life Ins. Co., 153 Misc 2d 1 [NY County 1991]; Marchica v Long Is. R. R., 810 F Supp 445 [ED NY 1993], 31 F3d 1197, cert denied — US —, 115 S Ct 727 [1995].)
The plaintiff is seeking damages for mental distress and anguish resulting from her fear of contracting AIDS, but not the injury which may be caused by actually contracting HIV/ AIDS itself.
In the instant case, the plaintiff, a nurse, sustained a deep needle puncture wound to her thumb from an angiocath stylette which was located in the crib of an infant patient with HIV/AIDS. An angiocath is a special needle inserted intravenously either to draw blood from or to insert fluid into a vein.
The term "AIDS” refers to the Acquired Immune Deficiency Syndrome. In its technical sense, it is the terminal stage of a continuum of disease which begins with infection by the Human Immunodeficiency Virus (HIV).[1] For the purpose of scientific accuracy the court shall use the term HIV/AIDS to denote the various stages and progressions from HIV infection, to HIV illness; and, finally the diagnosis of AIDS itself. HIV/AIDS is believed to be a 100% fatal infection and once infected you are infected and presumed infectious for life.[2]
By 1985, four years after the outbreak of the first reported cases of HIV/AIDS, the scientific community succeeded in identifying the causative agent (HIV), established the modes of transmission and developed a serological (blood) test to *444 detect the presence of HIV infection.[3] Although the test to detect the presence of HIV infection is universally referred to as an AIDS test, the test does not diagnose AIDS; nor, does it even detect the presence of HIV. Instead, the HIV/AIDS test detects the presence of the HIV antibody within the person’s blood.[4]
Antibodies are the "specific response” or "attack” mounted by our immune system to repel a foreign agent (germ or virus) that has caused infection and/or disease.[5] If you have the HIV antibody, ergo, you must be infected with HIV.
The test for the HIV antibody is considered highly accurate;[6] except, for the period of time shortly after HIV infection. The human immune response requires some time to develop and produce the HIV antibody. For most people, the time period may be from six weeks to six months after HIV infection occurs. This so-called "window” period may, in a remote small number of individuals, be as long as nine months. By the passage of 12 months all are believed to have had ample time for the body to produce the HIV antibody.[7]
In the case at bar, plaintiff underwent an HIV antibody blood test immediately after being stuck in her finger with the stylette (sharp instrument) left in the crib of an HIV positive infant.
This is the specific exposure incident upon which this lawsuit is grounded.
The Centers for Disease Control have documented transmission of HIV infection by exposure to the virus through an accidental stick by a needle or some other sharp instrument contaminated by HIV.[8]
"The transmission of AIDS (HIV infection) to health care workers by HIV infected patients is a matter of real concern. The Communicable Disease Center estimates that one of each *445 two hundred untoward events (needle sticks, etc.) has resulted in infection of a health care worker”.[9]
The results of the plaintiff’s aforestated test were negative for the presence of the HIV antibody; thus, precluding all reasonable likelihood of the plaintiff having had a prior, unrelated, HIV infection.
Once having established a negative baseline test the plaintiff, if she so desired, could have submitted herself to further periodic HIV antibody testing.
The accepted scientific standard for ruling out the presence of HIV/AIDS infection is to continually test negative for HIV antibody at 3, 6, 9 and 12 months after primary exposure. This is the recommended regimen taking into consideration the time necessary for the human immune system to react to the HIV infection and produce the HIV antibody to the HIV virus.
The plaintiff, by refusing to follow this medically and scientifically accepted procedure for detecting the presence of HIV infection, may have contributed to the anxiety generated by her fear of contracting HIV/AIDS.
Whether or not the plaintiff’s refusal to undergo further HIV antibody testing violates the mitigation of damages rule is for the trial court to determine and even if the plaintiff were tested now and found to be HIV/AIDS free such a finding would not necessarily defeat her claim since she would have lived with a real fear of contracting HIV/AIDS for a measurable period of time.
Should the plaintiff intend to offer expert testimony to controvert the medical/scientific standard for HIV antibody testing, as enunciated herein, she must notify the defendants forthwith and the movants may renotice this motion.
Additionally, were the plaintiff to have based her cause of action in having actually become HIV/AIDS infected, then, in that event, the court would have considered otherwise and found the necessary compelling justification to order her to submit to an HIV antibody test.[10]
*446 By commencing a lawsuit seeking damages for having contracted HIV/AIDS infection, a plaintiff places her HIV status in issue and may not thereafter refuse to submit to a definitive HIV antibody test.

. Green, The Transmission of AIDS, Aids and The Law: A Guide For The Public, Yale Univ Press (1987), at 29-31.

. Feffer, AIDSphobia, A New Entity, 65 NYS Bar J 14, 15, Feb. 1993.

. Osborne, The AIDS Epidemic: Discovery Of A New Disease, Aids and The Law: A Guide For The Public, Yale Univ Press (1987), at 22-23.

. Jarvis, Aids Law In A Nutshell, West Publ Co (1991), at 17.

. Dalton & Burris, Aids And The Law: A Guide For The Public, Yale Univ Press (1987), at 361.

. Joseph, Dragon Within the Gates, Carroll & Graf Pubis (1992), at 42-43.

. Jarvis, Aids Law In A Nutshell, West Publ Co (1991), at 18.

. Hooker & Bryant, HIV/AIDS Facts To Consider, HIV/AIDS Fact Finder Natl Conf of St Legislatures (1993), at 6.

. Feffer, AIDSphobia, A New Entity, op. cit.

. Public Health Law § 2785 (2) (a), in pertinent part, reads as follows: "A court may grant an order for disclosure of confidential HIV related information upon an application showing * * * a compelling need for disclosure of the information for the adjudication of a * * * civil proceeding”.