291 N.J. Super. 600 (1996)
677 A.2d 1179
KAREN WILLIAMSON AND JAMES WILLIAMSON, PLAINTIFFS-APPELLANTS,
v.
LEONARD WALDMAN, JEFFREY FELDMAN, AND JACQUES G. LOSMAN, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued June 11, 1996.
Decided July 2, 1996.
*601 Before Judges A.M. STEIN, KESTIN and CUFF.
David M. Fried argued the cause for appellants (Blume, Goldfaden, Berkowitz, Donnelly, Fried & Forte, attorneys; Mr. Fried, on the brief).
Robert J. Mormile argued the cause for respondent Waldman (Mortenson & Pomeroy, attorneys; Mr. Mormile, on the brief).
Daniel R. Esposito argued the cause for respondent Feldman (Jackson, Vaurio & Buckley, attorneys; Sean P. Buckley, of counsel; Mr. Esposito, on the brief).
*602 Peter A. Olsen argued the cause for respondent Losman (Francis & Berry, attorneys; Joan B. Lorio, of counsel, and, with Mr. Olsen, on the brief).
The opinion of the court was delivered by KESTIN, J.A.D.
Plaintiff Karen Williamson pleads a cause of action for negligent infliction of emotional distress and related claims based on her fear of developing acquired immune deficiency syndrome (AIDS) or hepatitis. The trial court dismissed on defendants' motions for summary judgment. We reverse.
On June 6, 1991, plaintiff was pricked with a lancet when, functioning as an employee of a cleaning contractor, she attempted to remove EKG stickers from a trash can in defendants' medical offices. A lancet is defined as "a surgical knife with a small, sharp-pointed, two-edged blade". Stedman's Concise Medical Dictionary 551 (2d ed. 1994). It is often referred to as a "short sharp" and is commonly used for pricking a finger to acquire a blood sample. The lancet that punctured plaintiff's skin was concealed within the rubbish. The method of disposal violated regulatory requirements. See N.J.A.C. 7:26-3A.11(c)1.
After the incident, plaintiff discussed it with an acquaintance who was a nurse. She was advised to go to an emergency room to be tested for hepatitis and AIDS. Instead, four days later, plaintiff visited her family physician, Dr. DeMasi, who recommended that plaintiff should be tested for the human immunodeficiency virus (HIV) annually for seven to ten years. No test was performed at that time, however, because Dr. DeMasi believed it was too soon following the puncture incident to obtain a meaningful result. Some eight months later, in February 1992, plaintiff returned to Dr. DeMasi complaining of fatigue. Blood work was done, but an HIV test was not included. Plaintiff visited Dr. DeMasi again in May complaining that she was depressed and tired. More blood work was ordered, again without an HIV test, and antidepressant medication was prescribed. In July 1992, HIV and hepatitis B *603 tests were conducted, with negative results. According to the motion judge, by the time of defendants' motions for summary judgment plaintiff had been tested for HIV and hepatitis five times in the three-and-one-half years since the incident, with negative results on each occasion.
The issue before us is whether it was correct, in the circumstances depicted, for the trial court to dismiss plaintiff's claim on summary judgment because she failed to make a prima facie showing of actual exposure to the diseases she fears, and because, in the light of all the testing and negative results, "plaintiff's reaction to favorable tests and her alleged continued distress in the face of same is idiosyncratic and demonstrates her not to be a person of average constitution." In the latter connection, the motion judge focused on the seminal case of Caputzal v. Lindsay Co., 48 N.J. 69, 222 A.2d 513 (1966). There, also in the context of an emotional distress claim, the Supreme Court confirmed it to be a question of law whether a particular consequence of an act or omission was reasonably to be foreseen and, therefore, actionable; or whether it was so highly extraordinary a consequence as to be ineligible for the relief tort law affords. Id. at 78, 222 A.2d 513. The motion judge concluded that because "plaintiff's continued emotional distress and fear of AIDS in light of medical tests and assurances to the contrary is such a highly extraordinary result of defendants' negligence, as presumed for this motion, ... defendants cannot and should not be held as the legal cause thereof."
Juxtaposed against these considerations is a different approach in a similar case. In De Milio v. Schrager, 285 N.J. Super. 183, 666 A.2d 627 (Law Div. 1995), decided several months after the trial court decision herein, a dental instrument punctured the skin of a trash collector. The matter was reported to the Division of Waste Management in the State Department of Environmental Protection. After investigation, three separate violation notices were issued charging the dentist with improper disposal of medical waste. There also, the trial court held that proof of actual *604 exposure to HIV was a prerequisite to recovery, but it held, as well, that where the cause of action arose from a violation of the standards governing the disposal of medical waste, "a rebuttable presumption of exposure will arise, enabling plaintiff to survive a motion for summary judgment." Id. at 188, 666 A.2d 627. The court there stressed the approach in 2 Fowler V. Harper & Fleming James, Jr., The Law of Torts, § 18.4 at 1036 (1956), which was at the heart of the governing principle of Caputzal: "in the case of injury or sickness brought on by emotional disturbance, liability should depend on the defendant's foreseeing fright or shock severe enough to cause substantial injury in a person normally constituted, thus then bringing the plaintiff within the `zone of risk.'" 48 N.J. at 76, 222 A.2d 513. We take the De Milio analysis to embody the idea that where a defendant's negligent act or omission provides an occasion from which a reasonable apprehension of contracting a deadly disease may eventuate, and where the quality of the conduct is such to create a presumption of exposure, the resulting claim for damages by reason of emotional injury may not be dismissed on summary judgment.
It cannot validly be said, as a matter of law, in the light of common knowledge, that a person who receives a puncture wound from medical waste reacts unreasonably in suffering serious psychic injury from contemplating the possibility of developing AIDS, even if only for some period of time, until it is no longer reasonable, following a series of negative tests, to apprehend that result. Indeed, one need not have actually acquired the HIV virus to be so affected by such a fear for a period, especially since some time must pass before an accurate test can be administered. We know of no reason, given existing circumstances and the realities of the times, as well as the policies that underlie tort law doctrine in this state, to require as a prerequisite to recovery for infliction of emotional distress that the plaintiff first establish actual exposure to the feared disease. The cause of action is "based on a reasonable concern that [the claimant] has an enhanced risk of ... *605 disease," Mauro v. Raymark Indus., Inc., 116 N.J. 126, 137, 561 A.2d 257 (1989), and a claim for medical surveillance damages. Ayers v. Township of Jackson, 106 N.J. 557, 590-91, 525 A.2d 287 (1987); Devlin v. Johns-Manville Corp., 202 N.J. Super. 556, 560-563, 495 A.2d 495 (Law Div. 1985); see also Evers v. Dollinger, 95 N.J. 399, 409-11, 471 A.2d 405 (1984).
Surely, the reaction of any claimant who receives a puncture wound from medical waste will be subjective. It will vary in character and intensity with the individual. But the fear of contracting disease cannot be seen as excessive for those reasons alone. Some persons of greater suggestibility or sensitivity may be more intensely affected than others without being regarded as vessels so frail as to be, as a matter of law, ineligible to make a tort claim.
This approach is faithful to the Harper & James formulation and the other authorities relied upon by the Court in Caputzal as it parsed out the elements of foreseeability and duty in cases involving claims of negligent infliction of emotional distress. The idea is that courts ought not to be unduly reluctant to reach results consonant with the reasonable reactions of real people as long as basic principles of tort law are preserved, including those that preclude the creation of duties that reasonably thoughtful defendants would not foresee. See Restatement (Second) of Torts, § 435, 436(2) (1965).
Even the Caputzal formulation itself is far more flexible and forgiving than the motion judge in this case saw it to be. The tragic facts concerning AIDS were well summarized by the trial court in De Milio, supra, 285 N.J. Super. at 188-89 & nn. 2-3, 666 A.2d 627 & nn. 2-3. It is a disease universally dreaded by the lay public. Under those circumstances, it cannot be concluded as a matter of law that the plaintiff reacted unreasonably or unforeseeably. Fearing that she faced serious injury as a result of exposure to HIV, it was not unreasonable that she would be greatly upset during the period of time that was necessary to obtain medical assurance that she was not infected. It may very well be *606 that there is some period of time after receiving a puncture wound from medical waste during which any person would experience a range of mental reactions, from mere anxiety to actionable emotional distress, and ought to be eligible for compensation therefor if she meets the required tests, including the serious injury standard applying to all claims based upon infliction of emotional distress. See Falzone v. Busch, 45 N.J. 559, 569, 214 A.2d 12 (1965). Unavoidably, jury questions are created, not issues to be decided as a matter of law: was plaintiff's reaction a reasonable response to the stimulus? for how long? to what extent? and so forth.
To rule as the trial court did is to hold that in the light of prevailing circumstances, scientific knowledge and common understanding, it was unreasonable for plaintiff to react as she says she did even for a period of time, and unforeseeable that she might do so. In seeing these to be unwarranted legal conclusions, we stress a basic difference in character between the type of injury claimed in Caputzal and plaintiff's claim here. In Caputzal and the cases cited therein as examples of claims arising from highly extraordinary consequences, 48 N.J. at 79-80, 222 A.2d 513, the reactions experienced from given stimuli seemed far removed from what might reasonably have been contemplated. In Caputzal itself, for example, a heart attack resulting from the fear of having been poisoned by discolored water from a malfunctioning water softener seemed out of line with the Court's sense of foreseeable consequences in a products liability action. Id. at 79, 222 A.2d 513. Here, we deal with defendants' presumed breach of regulatory standards, e.g., N.J.A.C. 7:26-3A, designed to protect employees and the public from contamination or infection from medical waste. It can hardly be considered to be a leap, in foreseeability terms or otherwise, that one who has come into invasive contact with such matter will fear the very harm contemplated by the regulation, even to the extent of experiencing serious emotional injury as a result.
*607 It is of no consequence that there is no record here of any action by the Division of Waste Management, as there was in De Milio. It is the fact of a breach of a regulatory standard designed to prevent the type of harm at issue that is significant, not whether the defendant has been cited for violations. In Hoagland v. Gomez, 290 N.J. Super. 550, 676 A.2d 187 (App.Div. 1996), we recently observed it to be well established that breach of a legislated standard of conduct may be regarded as evidence of negligence if the plaintiff was a member of the class for whose benefit the standard was established. Breach of the standard must be shown to have been the efficient cause of the injury upon which the cause of action is based, and the standard itself must be "germane to the type of hazard involved in the defendant's asserted duty." Id. at 554 (citing Carrino v. Novotny, 78 N.J. 355, 359, 396 A.2d 561 (1979)). See also Waterson v. General Motors, 111 N.J. 238, 263, 544 A.2d 357 (1988); Horbal v. McNeil, 66 N.J. 99, 103, 328 A.2d 604 (1974).
Denying defendants' motions for summary judgment will not subject them to any per se rule of negligence. The jury will be called upon to evaluate the reasonableness of the conduct that resulted in plaintiff's puncture wound, using the regulatory standard as a circumstance to be considered in assessing liability. Waterson v. General Motors, supra, 111 N.J. at 263, 544 A.2d 357. Plaintiff will be successful only if the jury finds negligence by defendants, and only to the extent it finds serious or substantial emotional injury from reasonably experienced emotional distress, see Frame v. Kothari, 115 N.J. 638, 642, 560 A.2d 675 (1989); Portee v. Jaffee, 84 N.J. 88, 94-95, 417 A.2d 521 (1980), including such permanent consequences as may be found, from the date of the puncture incident to whatever point, after medical consultation and tests, a reasonable person would cease to be so emotionally affected by the incident as to be visited with such dire consequences.
Reversed and remanded.