EILEEN MAJCA *et al.*, Plaintiffs-Appellants, v. STEPHEN BEEKIL *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 1—95—3232

Opinion filed June 24, 1997.

Martin L. Glink, of Arlington Heights, for appellants.

Wilson, Elser, Moskowitz, Edelman & Dicker (Bennett R. Heller and David M. Holmes, of counsel), and Francis J. Skinner-Lewis and Jennifer E. O'Leary Smith, both of Johnson & Bell, Ltd. (Thomas H. Fegen and Kelly N. Warnick, of counsel), all of Chicago, for appellees.

JUSTICE McNULTY delivered the judgment of the court:

Plaintiffs, Eileen and Michael Majca, sued Dr. Stephen Beekil and the estate of Dr. Peter Lacher for negligence that caused plaintiffs to fear that they may develop acquired immune deficiency syndrome (AIDS). We affirm the trial court decision granting summary judgment.

Eileen worked as office manager for Dr. Jorge Gaffud in 1991. As part of her duties, Eileen cleaned Dr. Gaffud's offices and took out the trash. Dr. Beekil rented part of the office space from Dr. Gaffud. Dr. Lacher agreed to pay Dr. Beekil half of the fees he received for work in the office Dr. Beekil rented in exchange for use of the office space, furniture and supplies one day each week. Dr. Lacher used the office on Mondays, while Dr. Beekil worked there on Wednesdays and Fridays. No one used the office on weekends.

Eileen emptied the garbage when she closed the office on Friday, March 1, 1991. She and Dr. Lacher worked in the office on Monday, March 4, and Dr. Lacher saw two patients that day. Dr. Lacher sometimes spat or blew his nose into tissues or paper towels, and he then threw the tissues or towels into the trash. Neither Eileen nor Dr. Lacher took out the trash on Monday.

Because Dr. Gaffud was on vacation, Eileen worked alone in the office on March 5, 1991. Before taking out the trash, she pushed the overflowing garbage down into the bag. A used scalpel, hidden under tissues in the trash, cut her hand. She saw mucus and dried blood on the scalpel, mingled with her wet blood.

Eileen went to another doctor in the office building, and he told her to go to the hospital. He called the hospital and told the nurse there to check Eileen for hepatitis and human immunodeficiency virus (HIV) infection. Six stitches closed the wound. Eileen left the scalpel in the trash, which she discarded the next day. She took antibiotics and pain killers for several weeks to counteract infection and pain from the wound. Her HIV tests in March and June both came back negative.

Dr. Lacher stopped working at the office in March 1991. On November 1, 1991, Dr. Lacher died from AIDS complications. Eileen first learned that Dr. Lacher had AIDS on the day he died. She testified at her deposition:

"[T]hat's when I just lost it.

*** [A doctor] had given me a sedative because I was just so worked up, and I started vomiting."

She took her next scheduled HIV test in December, and that test also showed no evidence of HIV infection.

In March 1992 Eileen and her husband, Michael, sued Dr. Beekil and Dr. Lacher's estate, seeking compensation for Eileen's medical expenses, pain, and her fear that she may contract AIDS, while Michael sought compensation for loss of consortium. They alleged Dr. Lacher's negligent disposal of the scalpel caused their losses, and they sought to hold Dr. Beekil liable as an occupant of the office and as Dr. Lacher's partner. Plaintiffs presented the affidavit of an AIDS expert who swore that the possibility of transmission could not be ruled out.

The trial court granted Dr. Beekil summary judgment on grounds that Dr. Lacher was neither his partner nor his agent and, as occupier of the office, Dr. Beekil had no way of knowing of the dangerous condition created by Dr. Lacher's negligence. The court also granted Dr. Lacher's estate summary judgment on plaintiffs' claims for damages from fear of AIDS. Plaintiffs settled with the estate all of their claims for medical expenses and pain for the cut. The court then dismissed all remaining claims pursuant to the settlement, denying plaintiffs' motion for reconsideration of the ruling on fear of AIDS. The court, citing *Doe v. Surgicare of Joliet, Inc.*, 268 Ill. App. 3d 793, 643 N.E.2d 1200 (1994), held that plaintiffs did not present adequate evidence of actual exposure to HIV.

Plaintiffs argue on appeal that *Surgicare* is wrongly reasoned and that, even under *Surgicare*, they presented evidence from which a trier of fact could find that, more likely than not, the scalpel that exposed Eileen's blood held some of Dr. Lacher's bodily fluids and those fluids contained HIV. See *Vallery v. Southern Baptist Hospital*, 630 So. 2d 861, 867-68 (La. App. 1993). To support the trial court's decision, defendants rely on scientific articles that are not admissible as substantive evidence of the facts stated therein. *Hoem v. Zia*, 239 Ill. App. 3d 601, 623-24, 606 N.E.2d 818 (1992), *aff'd*, 159 Ill. 2d 193, 636 N.E.2d 479 (1994). Under the standard advocated by the concurrence in *Doe v. Northwestern University*, 289 Ill. App. 3d 39 (1997) (DiVito, P.J., specially concurring), plaintiffs have adequately presented evidence of actual exposure and, therefore, this court should reverse the decision granting summary judgment. However, under the reasoning of the majority in *Northwestern*, plaintiffs are not entitled to recover because their reasonable fears were never severe enough to warrant tort compensation.

Illinois courts permit a plaintiff who has suffered a physical

impact and injury due to a defendant's negligence to recover for the mental suffering that the injury directly causes. *Carlinville National Bank v. Rhoads*, 63 Ill. App. 3d 502, 503, 380 N.E.2d 63 (1978). However, commentators have argued that courts should limit recovery for emotional distress, including fear, because of

> "(1) the problem of permitting legal redress for harm that is often temporary and relatively trivial; (2) the danger that claims of mental harm will be falsified or imagined; and (3) the perceived unfairness of imposing heavy and disproportionate financial burdens upon a defendant, whose conduct was only negligent, for consequences which appear remote from the 'wrongful' act." W. Keeton, Prosser & Keeton on Torts § 54, at 360-61 (5th ed. 1984).

See *Corgan v. Muehling*, 143 Ill. 2d 296, 309, 574 N.E.2d 602 (1991). Illinois courts address these concerns by requiring medically verifiable manifestations of severe emotional distress. See *Corgan*, 143 Ill. 2d at 311-12. In *Allen v. Otis Elevator Co.*, 206 Ill. App. 3d 173, 183-84, 563 N.E.2d 826 (1990), the plaintiffs foreseeably experienced fear, with physical manifestations of distress, as a result of the defendant's negligence, but the court held that the foreseeable fear and distress did not reach a degree of severity that justified tort compensation. Thus, not all negligently caused fears are compensable.

The concerns raised by Keeton and addressed in *Corgan* particularly apply to claims that a defendant's negligence has caused a plaintiff to fear future illness. These concerns should lead courts in such cases to restrict recovery to compensation for severe emotional distress arising from serious fear occasioned by a substantial, medically verifiable, possibility of contracting the disease. In *Wetherill v. University of Chicago*, 565 F. Supp. 1553 (N.D. Ill. 1983), the court, interpreting Illinois law, found that a plaintiff claiming that a physical impact caused fear of cancer needed to prove "a reasonable fear, not a high degree of likelihood" of contracting the feared illness. *Wetherill*, 565 F. Supp. at 1559. The court noted that "the distinction is meaningful, for fears of future injury can be reasonable even where the likelihood of such injury is relatively low." *Wetherill*, 565 F. Supp. at 1559. The court emphasized that the plaintiffs in that case could present medical evidence of studies showing that they had an increased risk of developing cancer as a result of the defendants' negligence.

A small probability of contracting disease must be balanced against the probable harm if the disease is contracted to determine whether a plaintiff has alleged adequate grounds for recovering for severe emotional distress. The relatively minor fears of the plaintiffs in *Allen* are not comparable to a real, foreseeable fear of AIDS, such

as plaintiffs in this case suffered; however, even a foreseeable fear of deadly disease may not be compensable if the feared contingency is too unlikely.

Where hysterical fear of a disease is sufficiently widespread, and popular knowledge concerning its etiology is limited, a plaintiff may foreseeably experience severe emotional distress without medically verifiable evidence of a substantially increased risk of contracting the disease. Most courts have held that recovery for fear of disease should not extend to such foreseeable fears, because, as commentators have noted, such broad recovery rewards ignorance about the disease and its causes. See Note, *The Fear of Disease as a Compensable Injury: An Analysis of Claims Based on AIDS Phobia*, 67 St. John's L. Rev. 77 (1993); J. Maroulis, *Can HIV-Negative Plaintiffs Recover Emotional Distress Damages for Their Fear of AIDS?*, 62 Fordham L. Rev. 225 (1993). Courts have accordingly restricted recovery to fears supported by medical evidence of an increased risk of contracting disease. See *Wetherill*, 565 F. Supp. at 1559-60; *Vallery*, 630 So. 2d at 866; *Ferrara v. Galluchio*, 5 N.Y.2d 16, 152 N.E.2d 249, 161 N.Y.S.2d 832 (1958); *Eagle-Picher Industries, Inc. v. Cox*, 481 So. 2d 517, 528-29 (Fla. App. 1985); but see *Anderson v. Welding Testing Laboratory, Inc.*, 304 So. 2d 351, 353 (La. 1974). The restriction on recovery effectively requires plaintiffs to mitigate their fears by learning what they can about the likelihood that they have contracted the disease. Thus, the restriction on recovery is an aspect of each plaintiff's

> "active duty of making reasonable exertions to render the injury as light as possible. If, by *** negligence or wilfulness, he allows the damages to be unnecessarily enhanced, the increased loss, that which was avoidable by the performance of his duty, falls upon him." *Culligan Rock River Water Conditioning Co. v. Gearhart*, 111 Ill. App. 3d 254, 258, 443 N.E.2d 1065 (1982).

Plaintiffs ask this court to allow them to recover for fear of AIDS during the period between the plaintiffs' learning of the exposure and the receipt of reasonably conclusive HIV-negative test results. See *Faya v. Almaraz*, 329 Md. 435, 455, 620 A.2d 327, 336-37 (1993); *Tischler v. Dimenna*, 160 Misc. 2d 525, ____, 609 N.Y.S.2d 1002, 1008-09 (Sup. Ct. 1994); *Williamson v. Waldman*, 291 N.J. Super. 600, 606, 677 A.2d 1179, 1181 (1996). Commentators support recovery for this period. See 67 St. John's L. Rev. at 101; 62 Fordham L. Rev. at 262-63. The limitation to this "window of anxiety" (*Tischler*, 160 Misc. 2d at ____, 609 N.Y.S.2d at 1008) comports with the restriction of recovery to severe emotional disturbance. Before tests can determine with reasonable certainty whether one is HIV-positive, if one knows his bodily fluids may have come into contact with the

bodily fluids of an HIV-positive person, he has reason to suffer severe emotional distress. While one may, after testing, reasonably fear that technicians did not perform the HIV test properly, or that one falls in the small group of persons who belatedly develop HIV antibodies or for whom the tests do not detect the presence of HIV, these fears should not cause debilitating emotional distress, and the possibility of contracting the disease following reasonably conclusive negative tests is too remote to warrant tort compensation.

A plaintiff who fears that she has contracted AIDS because of a defendant's negligence should recover damages for the time in which she had a reasonable fear of a substantial, medically verifiable possibility of contracting AIDS. The reasonable, compensable fear does not include the augmentation of that fear due to ignorance concerning AIDS and its transmission. This reasoning is compatible with the results of most cases requiring proof of "actual exposure": while any person stuck with a used needle should, reasonably, fear the possibility of contracting AIDS, this reasonable fear is not of a sufficient degree to be compensable, unless the plaintiff faces a particularly substantial risk of HIV infection, as, for instance, when the plaintiff learns that the used needle probably held bodily fluids of a person who had HIV. As the court said in *Vallery*, 630 So. 2d at 867:

> "To recognize a cause of action *** when the presence of HIV is not shown (or, at the pleading stage, alleged), is clearly unsound. Fear in such situations may be genuine but it is based on speculation rather than fact."

Accord *De Milio v. Schrager*, 285 N.J. Super. 183, 201, 666 A.2d 627, 634 (1995).

Also, a plaintiff's reasonable fear must be considered no longer compensable once reliable tests show with a high degree of probability that the plaintiff has not been infected by HIV. The negative tests should prevent the reasonable fears from causing severe emotional distress. *Faya*, 329 Md. at 455, 620 A.2d at 337; *Williamson*, 291 N.J. Super. at 606, 677 A.2d at 1182. According to several studies, almost all persons who have contracted the strain of HIV most common in the United States will test positive within six months of the initial exposure. See 67 St. John's L. Rev. at 99-100; *Brown v. New York City Health & Hospitals Corp.*, 164 Misc. 2d 441, ___, 624 N.Y.S.2d 768, 770 (Sup. Ct. 1995), *aff'd*, 225 A.D.2d 36, 648 N.Y.S.2d 880 (1996). Plaintiffs here have presented no evidence calling into question the methodology or conclusions of these studies.

Plaintiffs reasonably feared a possibility of contracting AIDS once Eileen cut herself on the scalpel, but the facts plaintiffs then knew showed no more than a very remote possibility of HIV infec-

tion. The reasonable fear could not be sufficiently serious so as to be compensable until plaintiffs learned that Dr. Lacher had HIV, which gave them reason to believe that Eileen faced a particularly substantial risk of HIV infection. Eileen admitted that she first learned this on November 1, 1991.

By that time Eileen had had two tests showing her HIV-negative, and nearly eight months had passed since the exposure. Her subsequent test, the following month, again came back negative. These tests do not remove all doubt, and plaintiffs may remain reasonably apprehensive that Eileen might, at some time in the future, test HIV-positive and develop AIDS due to the exposure. However, that contingency is highly unlikely, and the reasonable fears based on that remote contingency are not severe enough to justify compensation through the courts. Where plaintiffs could have taken reliable tests any time after they learned that Dr. Lacher had been HIV-positive, defendants cannot be held liable for Eileen's delay from that time until the third, and most nearly conclusive, test. Thus, plaintiffs' reasonable fear of AIDS did not become compensable until November 1, 1991, when they learned of Dr. Lacher's condition, but by then the negative HIV tests made their reasonable fears not severe enough to be compensable. As there remains no time during which plaintiffs' reasonable fears attained a compensable severity, we affirm summary judgment in favor of defendants on the issue of plaintiffs' fear of AIDS.

Affirmed.

PRESIDING JUSTICE DiVITO, specially concurring:

I agree with the result reached by Justice McNulty in this case. I disagree, however, with her discussion of the standard for determining whether a fear of HIV infection is compensable First, this discussion is unnecessary given our decision that there was no "window of anxiety" in this case.

In addition, I find the standard Justice McNulty proposes confusing. She states that plaintiffs cannot recover for negligent infliction of emotional distress claims because their "reasonable fears were never so severe as to warrant tort compensation" (289 Ill. App. 3d at 761; see also 289 Ill. App. 3d at 763, 766). Although it is true that for the tort of intentional infliction of emotional distress a plaintiff must show severe emotional distress (see *Doe v. Calumet City*, 161 Ill. 2d 374, 392, 641 N.E.2d 498 (1994)), severity is not a requirement for negligent infliction of emotional distress. To recover for negligent infliction of emotional distress, direct victims must plead only the

elements of negligence. *Corgan v. Muehling*, 143 Ill. 2d 296, 306, 574 N.E.2d 602 (1991); *Hayes v. Illinois Power Co.*, 225 Ill. App. 3d 819, 825, 587 N.E.2d 559 (1992). In this case, therefore, I believe the question is not whether plaintiffs' fears were severe but whether they were proximately caused by defendants' negligence. See *Bain v. Wells*, 936 S.W.2d 618, 624-26 (Tenn. 1997) (absent proof of actual exposure, plaintiff failed to establish proximate cause, which is an essential element of negligent infliction of emotional distress). Because plaintiffs have failed to show actual exposure, there is no proximate cause, and their claim for negligent infliction of emotional distress must fail.

Furthermore, as I explained in *Doe v. Northwestern University*, 289 Ill. App. 3d 39 (1997) (DiVito, P.J., specially concurring), an actual exposure requirement is easier to understand and to apply than the standard Justice McNulty proposes.

According to the opinion authored by Justice McNulty, application of the actual exposure standard in this case would require reversal because plaintiffs have presented adequate evidence of actual exposure. 289 Ill. App. 3d at 762. I disagree because any conclusion that there was actual exposure in this case is based on speculation. For example, plaintiffs' allegation that there was dried blood on the scalpel does not establish actual exposure. Not only is the source of this blood uncertain, it is unlikely that the blood on the scalpel was Dr. Lacher's rather than that of one of his patients.

For these reasons, I specially concur.

JUSTICE RAKOWSKI, specially concurring:

I agree with both of my colleagues that, because Eileen Majca was outside of the "window of anxiety," summary judgment is proper.

I, therefore, would not address which standard is appropriate. Under either, plaintiffs' claims must fail.

The decisive utterance of this case is that summary judgment is affirmed because plaintiff is outside the "window of anxiety." Further, because my colleagues cannot agree on which standard is proper, any discussion of this issue does not even rise to the level of *obiter dictum*.