159 Ill. App.3d 377 (1987)
512 N.E.2d 1050
In re ESTATE OF IVA B. JONES, Deceased (Joy Frazier, Indiv. and as Ex'r under prior will, Plaintiff-Appellant,
v.
Atwood State Bank, as Trustee, et al., Defendants-Appellees).
No. 4-86-0855.
Illinois Appellate Court  Fourth District.
Opinion filed August 18, 1987.
Rehearing denied September 21, 1987.
*378 *379 Reino C. Lanto, Jr., of Rantoul, for appellant.
Wayne L. Bickes, of Rosenberg, Bickes, Johnson & Richardson, of Decatur, for appellees Norma J. Mohler and Janna Collins.
Affirmed in part and remanded.
JUSTICE GREEN delivered the opinion of the court:
On May 31, 1985, the circuit court of Moultrie County admitted to probate two instruments purportedly executed by Iva B. Jones (decedent), who had died on May 11, 1985. One instrument was a will dated March 29, 1984, giving all of her estate to defendant Atwood State Bank in a trust with her daughter, defendant Jean Mohler, as the lifetime income beneficiary. That instrument included directions that, upon Mohler's death, the property was to be distributed to Mohler's two daughters, plaintiff, Joy Frazier, and defendant Janna Collins, in equal shares. Mohler was appointed executor. Gifts over in the event of the death of either of the persons designated to take the remainder were also made. The other instrument was a codicil dated April 12, 1984, revoking the gift to Frazier.
On December 2, 1985, plaintiff Frazier filed a complaint in the same cause seeking to set aside the will and codicil on the grounds that decedent lacked testamentary capacity and that she had been subject to undue influence by Mohler and Collins. In addition to the latter defendants, Atwood State Bank as trustee, Mohler in her capacity as executor, and the Millikin Bank, as guardian for the decedent's incompetent *380 husband, William J. Jones, were named as defendants. Mohler, as executor, filed a counterclaim against plaintiff alleging that plaintiff had breached fiduciary duties she owed to the decedent. After an amended complaint was filed and issues drawn, a bench trial was held. At the close of plaintiff's case, the circuit court entered a judgment on October 21, 1986, in favor of defendants as to the count of the complaint alleging that the decedent lacked testamentary capacity. After all the evidence was presented, the court entered a judgment on November 12, 1986, in favor of defendants on the count based on undue influence and entered judgment on the counterclaim in favor of Mohler as executor and against plaintiff, awarding compensatory damages in the sum of $90,000 and punitive damages in the sum of $10,000.
Plaintiff has appealed maintaining: (1) the evidence did not support the judgments entered on the amended complaint; (2) the court erred in ruling that she was incompetent to testify on the issues of the decedent's testamentary capacity and the undue influence alleged to have occurred; (3) the court erred in admitting into evidence a tape recording of an interview with the decedent; and (4) the evidence did not support the amount of damages awarded on the counterclaim. We affirm the judgments entered on the complaint, affirm the judgment on the counterclaim subject to a remittitur and remand, all as we subsequently explain.
In passing upon the propriety of the judgment entered at the close of the plaintiff's case, we can consider only the evidence presented up to that time. Much of it concerns various wills and codicils executed by the decedent in the last decade of her life. The record indicated that she was approximately 82 years old at the time of her death.
Testimony was presented that on December 10, 1975, the decedent executed a will prepared by attorney Raymond Lee of Tuscola. Then, on March 10, 1980, she executed a will prepared by the law firm of Craig & Craig of Mattoon. Later, on March 24, 1981, she executed a will, again prepared by Raymond Lee. Following that, she executed a codicil to that will on October 14, 1983, which was drafted by William Noonan, then practicing in the Decatur area. Finally, she executed the will and codicil which are the subject matter of this case. They were prepared by attorney Wayne Bickes of Decatur. A common theme of the prior wills was to provide for a trust for decedent's farmland, to give a beneficial interest therein to her husband for life, then to Mohler for life and then to have the remainder distributed to Collins and plaintiff in equal shares. Decedent's husband, Mohler or plaintiff all were named as executor in at least one will.
Under the terms of the will of March 24, 1981, and the codicil of *381 October 14, 1983, (1) plaintiff was the named trustee of the farmland and executor of the will; (2) Mohler, Collins, and plaintiff were to receive annual income from the trust upon the death of decedent's husband until 20 years after the death of decedent; and (3) at that time, the assets of the trust were to be distributed to those three persons or their survivors in equal shares. Thus, if that will and codicil were found to be the last will and testament of decedent, plaintiff would obtain a contingent one-third interest in the remainder, a trusteeship and an executorship which she does not have under the documents admitted to probate.
Raymond Lee testified that he had become concerned about the decedent's mention to him of animosity between plaintiff and her mother, Mohler, and accordingly he took great care to study the decedent's testamentary capacity in 1981. He indicated he was convinced that she had that capacity at that time. However, he also stated that in the spring of 1983, he was approached by the decedent and plaintiff and was asked to defend the decedent in a proceeding brought by Mohler to have decedent declared to be a disabled adult because of mental incapacity. (Ill. Rev. Stat. 1981, ch. 110 1/2, par. 11a-3.) Lee testified that, by that time, decedent had "no free will left" and that she could be easily influenced. He stated that she appeared confused and could not answer direct questions. He said he doubted if she knew the state of her bank account.
William Noonan testified that at the time decedent executed the codicil of October 14, 1983, she also executed a document entitled "power of attorney," but which actually created a revokable trust in plaintiff of undescribed property. Noonan stated that he believed the decedent to be competent at that time, that she knew who her heirs were and whom she wished to benefit as well as the extent of her property. However, Noonan also testified that in the spring of 1984, he represented the decedent in a proceeding brought against her by a Decatur bank. He indicated that, at that time, she rambled, was unresponsive to questions concerning financial matters, and had difficulty hearing.
Dr. Gordon Messmore of Arthur, decedent's family physician, testified that from 1979 or 1980, decedent suffered from congestive heart failure and diabetes mellitus together with chronic anxiety and depression. He stated that she was concerned with whether she had sufficient money to care for herself. Messmore stated that her heart condition did not have much effect on her mental condition although such condition does affect that of many people. He explained that he had prepared and signed a report attached to the petition to have a guardian *382 appointed for the decedent, because he felt she was in a constant state of anxiety about financial matters and that her judgment was approximately 30% impaired. He stated, however, that he thought she had the mental capacity to understand a will and documents such as a power of attorney.
John Dukeman, executive vice-president of the Arthur State Bank, testified that he had known decedent all of his life and had dealt with her over the last six or seven years of her life. He stated she had been concerned about who would be caring for her and her property, but he had never seen her when he did not think she was mentally competent.
 1 In a civil bench trial when, as here, a motion for judgment is made at the close of the plaintiff's evidence by the defense under section 2-1110 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2-1110), the trial court is required to weigh the evidence and grant judgment to all defendants against whom the evidence does not preponderate. (Kokinis v. Kotrich (1980), 81 Ill.2d 151, 407 N.E.2d 43.) The factual determination of the trial court prevails on appeal unless it is contrary to the manifest weight of the evidence. 81 Ill.2d 151, 407 N.E.2d 43.
 2 We do not find the trial court's determination that the decedent had testamentary capacity to be contrary to the manifest weight of the evidence. That capacity is "the ability to know and understand the natural objects of one's bounty [and] the nature and extent of one's property" and to form a plan to dispose of the property. (Manning v. Mock (1983), 119 Ill. App.3d 788, 804, 457 N.E.2d 447, 456.) A person may be able to do so despite an inability to transact ordinary business. (DeMarco v. McGill (1948), 402 Ill. 46, 59, 83 N.E.2d 313, 320.) While the evidence presented here showed that the decedent's ability to make business judgments became increasingly impaired, little, if any, evidence indicated that she had forgotten who the objects of her bounty were or what the nature of her property was. The general tenor of the disposition that she made was the same except that she changed her mind as to whether she wished for plaintiff to benefit from her estate. The court did not err in finding for defendants on the plaintiff's claim of lack of testamentary capacity.
 3 The determination that the decedent did not execute the will and codicil in issue while under undue influence was made only after hearing all of the evidence. Plaintiff's theory was that Mohler had exerted the undue influence. Both plaintiff and Mohler had powers of attorney at different times to handle the decedent's affairs, and both had done so. John Dukeman testified that whoever happened to be caring for decedent at a particular time had influence over her and also met *383 her displeasure if that person were tardy in attending to her. Plaintiff testified to hearing Mohler tell the decedent in early 1983 that plaintiff had been drinking in the company of a man and that "things should be changed," thus implying a change in decedent's will. Plaintiff also testified to hearing Collins tell the decedent that if she wanted to see Collins' children, she should do as Mohler told her. Attorneys Lee and Noonan both testified that Mohler called them and inquired how they were changing decedent's estate plan at the time they were drafting testamentary disposition for decedent. Mohler denied making either call.
Mohler admitted making the arrangements for the decedent's appointments with attorney Bickes when the will and codicil were drawn but testified she did not know what the decedent had in mind in regard to the disposition of her property. A tape cassette purportedly made when the will was executed in Bickes' office was admitted in evidence. A transcript showed that (1) Mohler was not present when the will was executed; and (2) Bickes had asked the decedent if she had been influenced by Mohler, Collins, or plaintiff. The transcript indicated that decedent said she had not been so influenced. The tape also indicated that the decedent still intended at that time that plaintiff share in the residue of her estate although plaintiff had pledged some of the decedent's property to secure plaintiff's personal indebtedness.
The contested will and codicil benefited Mohler over the decedent's prior testamentary plan only in that she became the executor. Evidence indicated that Mohler favored her daughter Collins over her daughter plaintiff, and thus, the codicil eliminating any gift to plaintiff might also be considered a benefit. Evidence also indicated that by the late winter and spring of 1984, a fiduciary relationship had developed between Mohler and decedent. However, even assuming this to be true, as we later explain, substantial evidence existed that plaintiff had taken advantage of decedent in a number of ways. The trial court could well have found that the decedent's distress at what had taken place was the sole procuring cause of the decedent's decision to modify her testamentary plan and overcame any presumption to the contrary. The trial court's finding in favor of the defendants on the undue influence charge was not contrary to the manifest weight of the evidence.
 4 In the course of plaintiff's testimony in her own behalf, she was asked on direct examination if, based on her contacts with her grandmother (decedent) from 1979 through 1984, she had an opinion as to whether in March and April 1984, her grandmother was (1) of sound mind, and (2) under the control or influence of anyone. The defense objected on the basis of the Dead Man's Act (Ill. Rev. Stat. 1985, *384 ch. 110, par. 8-201). The objection was sustained. Plaintiff then offered to prove that her answers would be (1) the grandmother (decedent) did not understand the nature and extent of her estate; and (2) she was under the influence of Mohler to the extent she was deprived of her freedom of will. Plaintiff's second claim of error is that the court's ruling was incorrect.
Section 8-201 of the Code of Civil Procedure, entitled the Dead Man's Act, states in part:
"In the trial of any action in which any party sues or defends as the representative of a deceased person * * *, no adverse party or person directly interested in the action shall be allowed to testify on his or her own behalf to any conversation with the deceased * * * or to any event which took place in the presence of the deceased [with certain exceptions]." Ill. Rev. Stat. 1985, ch. 110, par. 8-201.
In Manning v. Mock (1983), 119 Ill. App.3d 788, 457 N.E.2d 447, this court held that, under the foregoing provisions of the Dead Man's Act, a party who could not testify as to conversations with the deceased or events taking place in the presence of the deceased was incompetent to testify as to a decedent's capacity. This court reasoned that, because the witness was a layperson rather than an expert, his ability to testify had to be based upon his acquaintance with the deceased and required that he relate facts and circumstances to support the opinion, citing Quellmalz v. First National Bank (1959), 16 Ill.2d 546, 551, 158 N.E.2d 591, 594. Here, plaintiff was a party to the case and adverse to the representative of the decedent. In Manning, the contacts which the party-witness had with the deceased were limited to those surrounding the execution of the will. Here, the contacts plaintiff had upon which to base her opinions were more extensive. However, in both circumstances, the only matters which would have given the witness firsthand information as to the competency of the decedent would have been conversations with the decedent or the witnessing of events occurring in the presence of the decedent.
The Dead Man's Act exempts from exclusion conversations or events in the decedent's presence when any person testifies on behalf of the decedent's representative to that conversation or event. (Ill. Rev. Stat. 1985, ch. 110, par. 8-201(a).) Plaintiff maintains that, because Collins testified concerning decedent's competence, plaintiff should have also been permitted to testify as to the decedent's competence and whether she was under undue influence. However, Collins was called as an adverse witness by plaintiff and she was not testifying on behalf of the decedent's representative. In re Estate of Colewell *385 (1972), 9 Ill. App.3d 247, 292 N.E.2d 96.
The trial court properly sustained defendants' objection to plaintiff's testimony as to the decedent's competence and as to whether she was under undue influence and properly refused the offer of proof.
Over objection by the plaintiff, the defense was permitted to present into evidence a tape recording purporting to set forth a conversation in the office of Wayne Bickes between Bickes and the decedent just prior to the execution of the will of March 29, 1984. The voices of Bickes and the decedent were identified by Mohler. The tape recording indicated: (1) Bickes made a statement that Mohler had brought the decedent to the office and then had been told to leave; (2) the decedent stated that was true; (3) Bickes then asked decedent if Mohler, Collins, or plaintiff had tried to influence her to make the will; (4) the decedent responded, "No, I made it myself"; and (5) she then stated that Bickes had not influenced her to make the will. The decedent's other answers to questions on the tape recording indicated that she then wanted Collins and plaintiff to have the remainder upon Mohler's death and that this was so even though plaintiff had used some $50,000 worth of the decedent's assets to secure loans to plaintiff.
Plaintiff's objection to the introduction of the tape recording into evidence was based on contentions that (1) the tape recording had been made in violation of legislation against eavesdropping (Ill. Rev. Stat. 1985, ch. 38, par. 14-1 et seq.); and (2) there was a general lack of proof of authenticity. We note that the claim of error has applicability only as to the propriety of the judgment for defendants on the count alleging undue influence. The evidence was introduced as part of the defendants' case. Judgment had previously been entered for the defendants as to the count based on lack of testamentary capacity. The conversations have no relationship of substance to the counterclaim.
 5 Section 14-2(a) of the Criminal Code of 1961 (Code) prohibits use of a recording device "to hear or record" any part of a conversation unless all parties consent to the recording except under certain circumstances not applicable here. (Ill. Rev. Stat. 1985, ch. 38, par. 14-2.) Section 14-5 of the Code (Ill. Rev. Stat. 1985, ch. 38, par. 14-5) makes recordings taken in violation of section 14-2(a) inadmissible in civil as well as most criminal proceedings. Plaintiff maintains that the foregoing provisions rendered the recordings inadmissible here because no showing was made that either Bickes or the decedent consented to the recording. Usually, illegality in the obtaining of evidence need not be negated in order to lay a foundation for the introduction of that evidence. Rather, the responsibility of showing such illegality lies *386 with the opponent to the evidence. In contending that proof of proper consent of parties was a necessary part of the foundation here, plaintiff relies upon the following statement in a highly authoritative text on Illinois evidence in a paragraph generally devoted to establishing authenticity of sound recordings. The text states, "[t]he recording, of course, to be admissible must not be barred by the eavesdropping statute" which was previously described as section 14-1 et seq. M. Graham, Cleary & Graham's Handbook of Illinois Evidence sec. 901.6, at 634 (4th ed. 1984).
We do not interpret the foregoing text to indicate that the proponent of the introduction of recordings need negate any impropriety in obtaining the recording in order to lay a foundation for its admission. We know of no authority to support such a requirement. We hold that it was not required here. We do note that the fact that questions were being asked and answers given would indicate that both Bickes and the decedent knew that a recording was being made. We also note that the right of privacy being protected by the statute was that of the decedent and Bickes, and the latter is offering the evidence on behalf of the estate of the decedent.
 6 We have more difficulty with the question of the sufficiency of the general foundation to the recording. As has been stated, Mohler identified the voices on the tape as those of Bickes and the decedent. Linda Gisinger testified that she was a secretary to Bickes and a witness to the execution of the will of March 29, 1984. She stated that after the will was executed, Bickes gave her the tape, and she placed it in the office safe, where it was stored until trial.
The requirements necessary to lay a foundation for the introduction of sound recordings have been said to vary according to the circumstances. Clearly, the authentication is sufficient if a witness testifies to having been present at the time of the conversation recorded and states that the recording "fully, fairly, and accurately reflects the conversation." People v. Lewis (1980), 84 Ill. App.3d 556, 406 N.E.2d 11; M. Graham, Cleary & Graham's Handbook of Illinois Evidence sec. 901.6, at 634 (4th ed. 1984).
 7 Here, nobody present during the conversation testified that the tape accurately portrayed the conversation. The voice identification was adequate, but no testimony was presented that the conversation was recorded or that the recording device was operational or properly operated. Some evidence was presented as to the chain of custody of the recording, but no showing was made as to any limitation that was placed on access to the safe in the law office. We must conclude that the foundation for the evidence was faulty and the admission *387 of the recording was error. However, we hold the error to be harmless. Without the recording, the evidence was still undisputed that Mohler was not present when the will was executed. The only statement that bore on the issue of possible undue influence was the decedent's statement that nobody was placing influence on her. A person executing a will would be unlikely to state otherwise. The recording involved the signing of the will where plaintiff was deprived of her executorship and not the signing of the codicil which deprived plaintiff of a substantial interest in the corpus of the estate. Although the trial court described the evidence as resembling "a voice from the grave," we do not consider the evidence to have been crucial.
 8 Finally we consider plaintiff's contention that the evidence did not support the amount of damages awarded on the counterclaim. The evidence indicated that, for a period of time between the early 1980s and sometime in 1983, plaintiff had charge of decedent's affairs in such a manner that a fiduciary relationship was created. The evidence further supported a finding that, during this period, the breach of those duties resulted in damage to decedent's estate as follows: (1) $5,000 worth of decedent's certificates of deposit were used to discharge an obligation of plaintiff's for which the decedent had been a surety; (2) the estate of decedent had been liable in the sum of $31,368.33 to the Millikin Bank for another loan to plaintiff which the decedent had guaranteed; (3) plaintiff obtained mineral rights to the decedent's farm and then, in the next two years, received rental payment of $4,400 and a bonus of $13,000 for assigning those rights; (4) plaintiff obtained a broker's commission of $2,250 by having the decedent convert $45,000 in certificates of deposit into a life annuity policy in a transaction which the court could have found to be highly disadvantageous to the decedent's best interests.
During the period of the fiduciary relationship, plaintiff also borrowed $35,000 from the First National Bank of Decatur and gave her note for it. The note contained a provision for guaranteeing the payment of the debt. A signature purporting to be that of decedent appears on that guaranty. Plaintiff has filed a petition in bankruptcy, and the creditor bank has brought suit against decedent's estate on the note. The estate contended that the signature was a forgery and that the estate was not liable. The matter was pending at the time of the hearing. Plaintiff asserts that, because of the uncertainty of the disputes, the estate's liability on the matter has not been determined, and the amount of the indebtedness on that note which plaintiff incurred is not properly shown to be a damage suffered by the estate. Plaintiff contends that the amount of damages shown in regard to the other *388 matters is less than $60,000 and, accordingly, damages in the amount of $90,000 are not justified.
We agree that damages in the sum of $90,000 are not justified. We recognize that damages cannot always be shown with exact accuracy and that damages awarded should not be set aside when they cannot be computed with great accuracy. (Tri-County Grain Terminal Co. v. Swift & Co. (1969), 118 Ill. App.2d 313, 254 N.E.2d 311.) Here, the estate undoubtedly supported additional damage in the costs of investigating and defending the various claims which plaintiff had imposed on the estate, and the court could have found that additional damage resulted because of plaintiff's conduct in persuading the decedent to invest the proceeds of the certificates of deposit into annuities. However, we do not see how the compensatory damages excluding those that might eventually result from liability on the note to the First National Bank could exceed the sum of $75,000.
Accordingly, we affirm the judgments entered as to the complaint in favor of defendants and against plaintiff. We also affirm the judgment entered on the counterclaim in favor of Mohler in her capacity as executor and against plaintiff conditioned upon the executor's filing in the circuit court of Moultrie County, within 30 days of the issuance of the mandate in this case, a remittitur sufficient to reduce the award of compensatory damages on the counterclaim to the sum of $75,000. If no such remittitur is timely filed, the judgment on the counterclaim shall be vacated in its entirety, and plaintiff shall be awarded a new trial as to the counterclaim. The effect of our ruling is that any cause of action by the executor against plaintiff in regard to the described note to the First National Bank of Decatur was not ripe for determination at the time of trial, and that this decision is not intended to bar any such action should the estate of the decedent be determined liable on that instrument. The case is remanded to the circuit court of Moultrie County for such purposes as may be required by this opinion.
Affirmed partially upon condition and remanded.
McCULLOUGH and KNECHT, JJ., concur.