FIRST DIVISION

June 28, 2002

No. 1-00-1528

ALAN MALANOWSKI, individually and as ) Circuit Court of

Special Administrator, ) Cook County.

)

Plaintiff-Appellant, ) 

) No. 98 L 7006

            )

DR. REENA JABAMONI, M.D., ) Honorable

) James P. Flannery,

Defendant-Appellee. ) Judge Presiding.

JUSTICE TULLY delivered the opinion of the court:

Plaintiff, Alan Malanowski, filed this medical malpractice action against defendants, Dr. Reena Jabamoni and Loyola University of Chicago.  Defendant Loyola University settled with the plaintiff and is not a party in this appeal.  In his complaint, plaintiff alleged that defendants were negligent in the treatment of the decedent, Jane Malanowski, on July 31, 1991.  After a trial, the jury rendered a verdict for defendant.

On appeal, plaintiff argues that the trial court (1) erred by admitting testimony barred by the Dead-Man's Act (Ill.Rev.Stat.1991, ch. 110, par. 8-201);  (2) improperly limited plaintiff's expert witness' testimony;  (3) improperly limited plaintiff's testimony; (4) erred in allowing the defendant two expert witnesses; (5) erred by not allowing exhibits into jury deliberations; (6) erred in limiting Plaintiff's closing argument; and (7) erred in instructing the jury.  Plaintiff further argues that these cumulative errors substantially prejudiced his right to a fair trial.  For the following reasons, the judgement of the trial court is affirmed.

BACKGROUND

In July, 1991, the decedent, Jane Malanowski (Malanowski), called her gynecologist, Dr. Reena Jabamoni (Dr. Jabamoni), complaining of a lump under her arm.  Malanowski decided to wait to see her doctor for her routine gynecological examination which was scheduled for two weeks later.  On July 31, 1991, Malanowski visited Loyola Medical Center where Dr. Jabamoni performed a routine gynecological exam including a pap smear and a breast examination.  Malanowski reported a reduction in the size of the lump.  In Malanowski's medical records from the July 31 exam, Dr. Jabamoni notes a right axillary lipoma of 2 cm.  Jabamoni further noted "advised removal if persists."  No follow-up examination was scheduled.

In March of 1993, Malanowski visited Dr. Thomas Ho at his office in Wisconsin.  Dr. Ho found a firm lump on Malanowski's right breast and a mass in her right axilla.  In April, 1993, Malanowski was diagnosed with Stage III, T2 N2 breast cancer with metastasis to the right axilla.  Malanowski was to undergo mastectomy, lymph node dissection and high dose chemotherapy with blood stem cell refusion.  Malanowski died on December 15, 1993, from complications arising from her breast cancer.

Prior to trial, plaintiff moved 
in limine
 to prevent Dr. Jabamoni from testifying to the content of her conversation with the decedent during the July 31, 1991 examination, arguing that such testimony would be barred by the Dead-Man's Act.  The trial court denied the motion and the plaintiff did not renew his objection at trial.  The plaintiff also moved 
in limine
 to bar Dr. Jabamoni from calling both of her experts, arguing that the two expert witnesses would give cumulative testimony.  The trial court denied this motion as well and the plaintiff did not object to either expert's opinion at trial.

Also prior to trial, Dr. Jabamoni moved 
in limine
 to prevent the plaintiff from testifying to what the decedent told him about what Dr. Jabamoni told her during the July 31, 1991 examination.  The defendant argued that the testimony was inadmissible as double hearsay.  The trial court granted the motion and the plaintiff was barred from testifying on that subject.  The record does not contain any of the plaintiff's testimony, nor does it include a formal offer of proof as to what that testimony would have been.

The trial court also granted the defendant's motion 
in limine
 preventing the plaintiff's expert from testifying that Dr. Jabamoni had breached a standard of care in not ordering a mammogram for the decedent on July 31, 1991.  The trial court ruled that because the expert would not testify that a mammogram would have detected cancer on that date, there was no evidence that the failure to order one caused any delay in the decedent's diagnosis.  The trial court ruled that without a causal connection, any alleged breach of the standard of care was irrelevant.

DISCUSSION

The first issue raised on appeal is whether the trial court erred in allowing Dr. Jabamoni to testify as to conversations she had with the decedent, Jane Malanowski, on July 31, 1991.  The plaintiff contends that such testimony should have been barred by the Dead Man's Act.

First, we note that the plaintiff waived this argument by failing to object to Dr. Jabamoni's testimony at trial.  However, considering this issue under the plain error doctrine, we disagree with the plaintiff and find that the trial court did not err in allowing Dr. Jabamoni to testify about her conversation with the decedent.

The Dead-Man's Act provides: 

"In the trial of any action in which any party sues or defends as the representative of a deceased person * * *, no adverse party or person directly interested in the action shall be allowed to testify on his or her own behalf to any conversation with the deceased * * * or to any event which took place in the presence of the deceased * * *, except in the following instances: 

(a) If any person testifies on behalf of the representative to any conversation with the deceased * * * or to any event which took place in the presence of the deceased * * *, any adverse party or interested person, if otherwise competent, may testify concerning the same conversation or event." (Ill.Rev.Stat.1991, ch.110, par. 8-201.)

Plaintiff's expert, 
Dr. Seltzer, testified about the progress notes, prepared July 31, 1991, in Dr. Jabamoni's handwriting, which state: 

" Rt. axillary lipume 2 cm / Lym node

Advised removal if persists"

Based on the information found in these notes, Dr. Seltzer
 testified that because Malanowski complained of a lump in her armpit, Dr. Jabamoni should have reevaluated the patient and not left the responsibility of a follow-up with the patient.  During the direct examination of Dr. Seltzer, the following took place:

"[Plaintiff Counsel]: And Doctor, do you have an opinion to a reasonable degree of medical certainty whether Dr. Jabamoni deviated from the standard of care on July 31, 1991, when she failed to offer Jane Malanowski the option of an immediate node biopsy?

[Dr. Seltzer]: Yes.

[Plaintiff Counsel]: And what is your opinion?

[Dr. Seltzer]: My opinion is she has a few options.  One is to say come back in a timely fashion, we just went through this.  In the absence of that she can say to the patient I don't know what this structure represents.  At best it's nothing serious, at worst it's cancer.  I therefore think you should have it removed to see if it's cancer."

Dr. Jabamoni's testimony was permissible under the Dead-Man's Act because plaintiff waived the bar of the Act by eliciting testimony from his expert witness about the meaning of Dr. Jabamoni's progress notes concerning the July 31, 1991 medical examination
. 

Dr. Jabamoni testified as follows:

"[Defense Counsel]: On July 31
st
, 1991, did you tell Jane Malanowski that there was no chance that this lump was a malignant cancer? 

[Dr. Jabamoni]: Absolutely not. 

[Defense Counsel]: What instructions did you give Jane Malanowski at that time? 

[Dr. Jabamoni]: I told Jane, Jane, you have an axillary mass.  You called up.  Since you called up to my examination which is about almost three weeks, it has gone down in size.  Listen, we don't have a diagnosis here.  It could be benign.  It could be cancer.  But listen, it has gone down.  Can you wait two weeks?  If it persists, if it doesn't disappear, please go to a surgeon because I cannot do the procedure.  I did not have the privilege to do the procedure.  I said have it removed by a surgeon.*** And that's why I said, listen, if it persists more than two weeks, this has to be excised."

We find that the testimony of Dr. Seltzer opened the door to Dr. Jabamoni's testimony.  Our finding is supported by the Illinois Supreme Court decision in 
Hoem v. Zia
, 159 Ill.2d 193, 636 N.E.2d 479 (1994).  The 
Hoem
 court noted that 
the purpose of the Dead-Man's Act is to remove the temptation of the survivor to a transaction to testify falsely and to equalize the positions of the parties in regard to the giving of testimony. (M. Graham, Cleary & Graham's Handbook of Illinois Evidence §§ 606.1, at 314-15 (5th ed. 1990).)  As the court reasoned in 
Hoem
,
 allowing the representative of the deceased to introduce his version of what course of action Dr. Jabamoni recommended or failed to recommend, without giving an equal opportunity to Dr. Jabamoni, would not advance the policy behind the Act.  Specifically, the questions posed to Dr. Seltzer by plaintiff's counsel assumed that Dr. Jabamoni failed to offer certain treatment options to the decedent. Under these circumstances, we, like the court in 
Hoem
, find it fundamentally unfair to deny Dr. Jabamoni an opportunity to explain her version of what happened. Left unchallenged, Dr. Seltzer's 
version would have remained with the jury as the only testimony regarding the conversation between Dr. Jabamoni and Malanowski.

The second issue raised on appeal is whether the trial court erred in allowing the defendant to introduce the testimony of two expert witnesses.  The plaintiff contends that the testimony of defendant's experts was cumulative and duplicative and the trial court abused its discretion in allowing both experts to testify.

The plaintiff has waived this issue.  Although the plaintiff filed a motion 
in limine
 to exclude the cumulative testimony of the defense experts, he did not renew his objection at trial.  We further find that this issue does not warrant review under the plain error doctrine.

The plaintiff next contends that the trial court erred in excluding testimony that the standard of care required the defendant to order a mammogram.  The trial court excluded Dr. Seltzer's testimony that Dr. Jabamoni breached the standard of care when she failed to order a mammogram on July 31, 1991.  The plaintiff contends that it was not necessary to present evidence that this breach was a proximate cause of the injury and that this testimony should have been allowed.  We disagree.

The trial court properly barred plaintiff's expert from testifying that Dr. Jabamoni breached the standard of care in failing to order a mammogram on July 31, 1991.  The plaintiff did not present any evidence that the failure to order a mammogram contributed to the death of Jane Malanowski.  Absent a causal connection to the decedent's death, the trial court properly excluded testimony regarding the mammogram.  Accordingly, we find that the trial court did not abuse its discretion in barring the testimony.

The plaintiff next contends that the trial court erred in barring plaintiff from testifying to any conversation the decedent had with the defendant regarding the July 31, 1991 examination.  The plaintiff contends that the testimony is not double hearsay and that the testimony was admissible under the "state of mind" exception to the hearsay rule.  The plaintiff further argues that the trial court "opened the door" to the testimony when the defendant was allowed to testify about conversations with the decedent.

This issue has been waived by the plaintiff.  The failure to make an offer of proof of excluded testimony waives that issue for purposes of review.  
Abbinante v. O'Connell
, 277 Ill.App.3d 1046, 1050, 662 N.E.2d 126, 129 (1996).  The record here does not contain any testimony from the plaintiff and no offer of proof was made.  Thus, the plaintiff has failed to preserve this argument for review.

Plaintiff next contends that it was error for the trial court to refuse to allow defendant's medical records to be submitted to the jury.   Section 2-1107 of the Code of Civil Procedure provides that documents read or received into evidence may be taken by the jury during their deliberations.  735 ILCS 5/2-1107(d).   However the decision of whether to send exhibits to the jury room rests within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion.  
Fultz v. Peart
, 144 Ill.App.3d 364, 379, 494 N.E.2d 212 (1986).   In 
Lawson v. G.D. Searle & Co.
, 64 Ill.2d 543, 556, 356 N.E.2d 779 (1976), the court stated that where exhibits contain considerable material irrelevant to the issues of the case, the preferred procedure is to have the parts which are relevant read to the jury.  In 
Fultz
, which is factually similar to the case sub judice, the trial court refused the jury's request to take hospital records into the jury room.  The appellate court stated that the records contained extensive medical information beyond the average juror's understanding as well as irrelevant information which might have improperly influenced the jury.  Throughout the trial witnesses for both parties were allowed to refer to and read parts of the record, and both counsel were allowed to refer to the record in their closing argument.  The court in that case concluded that there was no abuse of discretion in not allowing the records to be taken to the jury room.  
Fultz
, 144 Ill.App.3d at 380, 494 N.E.2d 212.   Likewise, in the instant case, we also conclude that the trial court did not abuse its discretion in refusing to allow Dr. Jabamoni's records to be submitted to the jury during their deliberations.

Plaintiff next contends that the trial court erred in limiting counsel's closing argument on damages.  Plaintiff's counsel did not discuss damages in his initial closing argument.  During rebuttal closing argument, plaintiff's counsel raised the issue of damages and the trial court sustained defendant's objection.  Plaintiff argues that defendant raised the issue of damages in closing argument so that it was an abuse of discretion to bar plaintiff from discussing damages in rebuttal closing argument.  We disagree.

The trial court properly barred plaintiff's counsel from discussing damages in rebuttal closing.  A review of the record shows that plaintiff's counsel did not raise the issue of damages in closing argument.  Defense counsel did not discuss damages and thus did not open the door for plaintiff's counsel to discuss damages in rebuttal.  Accordingly, the trial court did not err in barring plaintiff's counsel from raising the issue of damages in rebuttal.

Plaintiff next contends that the trial court erred in giving a mitigation of damages instruction to the jury.  Plaintiff asserts that a comparative negligence instruction should have been given rather than mitigation of damages.

Comparative negligence applies where "[t]he plaintiff's negligence is a legally contributing cause of his harm if, but only if, it is a substantial factor in bringing about his harm and there is no rule restricting his responsibility for it."   Restatement (Second) of Torts § 465(1) (1965).  Mitigation of damages imposes a duty on the injured party "to exercise reasonable diligence and ordinary care in attempting to minimize his damages after injury has been inflicted."   Black's Law Dictionary 904 (5th ed.1979).  
See
 
Grothen v. Marshall Field & Co.
, 253 Ill.App.3d 122, 625 N.E.2d 343, 347 (1993).

In a medical malpractice action, a comparative negligence instruction is appropriate if a party presents a theory of the case in which the patient's negligence precedes or is contemporaneous with the physician's malpractice, for example, when a patient delays in seeking treatment for his or her medical condition or injury.  
Smith v. Perlmutter
, 145 Ill.App.3d 783, 496 N.E.2d 358 (1986) (delay in seeking treatment for heart attack).  However, a mitigation of damages instruction is appropriate if a party presents a theory of the case in which the patient's negligence merely follows the physician's malpractice, for example, when a patient fails to participate in prescribed physical therapy.  
Fisher v. Slager
, 201 Ill.App.3d 480, 559 N.E.2d 118 (1990).

At trial, plaintiff's theory of the case was that Jane Malanowski had breast cancer on July 31, 1991, and that Dr. Jabamoni failed to take the steps necessary to make a diagnosis, which ultimately caused the death of Jane Malanowski.  The defendants' theory of the case was that, when Jane Malanowski came to her for medical care, she was told to have the mass in her armpit removed if it persisted and that it was Malanowski's subsequent failure to follow defendants' sound medical advice which contributed to her death.

At the jury instructions conference, plaintiff argued that the trial court should give the comparative negligence instruction to the jury (Illinois Pattern Jury Instructions, Civil, No. B10.03 (3d ed.1995) (hereinafter IPI Civil 3d)), because the defendant had plead affirmative defenses that Jane Malanowski was contributorily negligent.  The defendant submitted a mitigation of damages (IPI Civil 3d No 105.08) instruction, contending that the court should give the mitigation of damages instruction because anything plaintiff may have done to contribute to her own injury occurred after she sought treatment from the defendant, not before.  The circuit court gave the mitigation of damages instruction and not the contributory negligence instruction.

The trial court did not abuse its discretion in giving the mitigation of damages instruction.  The plaintiff argues that the defense theory was based on contributory negligence.  We disagree.  The defendant's theory of the case supported a mitigation of damages instruction, and the trial court properly gave that instruction.

For the foregoing reasons, the judgment of the trial court is affirmed.

AFFIRMED.

COHEN, P.J., and O'MARA FROSSARD, J., concur.