THIRD DIVISION
DECEMBER 23, 2009

No. 1-08-3207

| | | |
|---|---|---|
| STEVEN AGINS, Executor of the Estate of | ) | Appeal from the |
| Howard Agins, Deceased, | ) | Circuit Court of |
| | ) | Cook County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 02 L 1834 |
| | ) | |
| JEFFREY SCHONBERG, | ) | |
| and OTOLARYNGOLOGY GROUP, LTD., | ) | |
| a Corporation, | ) | Honorable |
| | ) | Clare McWilliams, |
| Defendants-Appellants. | ) | Judge Presiding. |

JUSTICE COLEMAN delivered the opinion of the court:

Plaintiff, Susan Agins, the widow of Dr. Howard Agins, filed a medical negligence

lawsuit against Dr. Allan Wolff, Dr. Jeffrey Schonberg, and Otolaryngology Group, Ltd., for

failing to evaluate, diagnose, and treat decedent's malignant nasal polyp (esthesioneuroblastoma

cancer), thereby contributing to his death on October 7, 2002. Following the trial, the jury

returned a verdict in favor of defendants. After hearing arguments on plaintiff's posttrial motion

for a new trial, the trial court entered judgment on the verdict. Plaintiff appeals from the denial

of the posttrial motion for a new trial. We affirm.

BACKGROUND

On May 25, 2000, decedent Dr. Howard Agins, an orthopedic surgeon at Evanston

Hospital, saw Dr. Allan Wolff at Dr. Wolff's office with a severe nosebleed from the right

nostril. Dr. Wolff, a physician in the Otolaryngology Group, physically examined decedent and identified a five-millimeter opening to the airway on the right side with severe scarring as well as a polyp on the anterior part of the right nose. Decedent had been suffering from severe nosebleeds intermittently for six days leading up to his visit with Dr. Wolff. Dr. Wolff cauterized decedent's nasal passage to stop the bleeding, advised decedent to get a CT scan, and referred the patient to his partner, Dr. Schonberg, who had more expertise in these matters.

The issues at trial and in this appeal concern the contact between decedent and Dr. Schonberg that may have occurred after decedent's visit with Dr. Wolff on May 25, 2000. Plaintiff contends that decedent saw Dr. Schonberg on several occasions during the summer of 2000, in Dr. Schonberg's office, at which time he cauterized decedent's nosebleeds, but did not otherwise evaluate or treat decedent's condition. Dr. Schonberg disputes that he ever saw decedent in his office. Instead, Dr. Schonberg contends that he had only informal contact with decedent, including an encounter on May 31, 2000, at which time Dr. Schonberg gave decedent samples of Nasacort, an anti-inflammatory, and Avelox, an antibiotic. Dr. Schonberg asserts that his last interaction with decedent was on June 5, 2000, after Dr. Schonberg checked if decedent had gotten a CT scan. Dr. Schonberg reviewed decedent's CT scan and called him to discuss the results. Decedent reported that he was on a different antibiotic (Ceftin) that was not prescribed by Dr. Schonberg. Dr. Schonberg noted in decedent's record: "on Ceftin, Nasacort. CT discussed. Observe over next two weeks and see me thereafter."

In late September 2000, decedent went to see Dr. Dean Toriumi, who referred him to two specialists, Dr. Origitano and Dr. Petruzzeli. Decedent saw both specialists in early October 2000. He was diagnosed with neuroblastoma cancer during one of these appointments between

October 9 and October 11, 2000. Thereafter, in October 2000, decedent underwent surgery to remove the malignant polyp in New York City with Dr. Constantino. The tumor returned and Howard Agins died on October 7, 2002.

Following trial, the jury returned a verdict in favor of defendants. Plaintiff does not appeal the verdict as to defendant Dr. Allan Wolff. Plaintiff filed a posttrial motion for a new trial based on the trial court's evidentiary rulings regarding the Dead-Man's Act (735 ILCS 5/8-201 (West 2006)) and a hearsay objection to testimony by Susan Agins. The trial court denied plaintiff's motion and entered judgment on the verdict. Plaintiff now appeals the denial of her posttrial motion.

On appeal plaintiff argues (1) that the trial court erred in finding a waiver of the Dead-Man's Act and allowing Dr. Schonberg to testify that Dr. Agins failed to return to his office for evaluation and treatment in the months after May 25, 2000; (2) that the trial court erred in finding plaintiff waived the Dead-Man's Act and allowing Dr. Schonberg to testify regarding conversations with decedent to explain his May 31, 2000, note in his office chart; and (3) that the trial court erred in barring as hearsay Mrs. Agins' testimony that the reason she insisted decedent see Dr. Toriumi in October 2000, was that Dr. Schonberg had informed decedent that surgery on the polyp could wait until after Thanksgiving. For the reasons that follow, we affirm.

ANALYSIS

The parties dispute the applicable standard of review in this case. Plaintiff asserts that our review should be *de novo* since the appeal involves application of a statute. Defendant disagrees, claiming that the issues involved are evidentiary and thus our review is for an abuse of discretion. The issues on appeal involve the admissibility of conversations between decedent and

Dr. Schonberg and do not involve statutory construction. Therefore, the issues are evidentiary. See *Beard v. Barron*, 379 Ill. App. 3d 1, 9 (2008), citing *In re Estate of Hoover*, 155 Ill. 2d 402, 420 (1993). Accordingly, we review the trial court's ruling for an abuse of discretion. *Beard*, 379 Ill. App. 3d at 9.

The statute at issue is the Dead-Man's Act (Act) (735 ILCS 5/8-201 (West 2006)). In pertinent part the Act provides:

> "In the trial of any action in which any party sues or defends as the representative of a deceased person ***, no adverse party or person directly interested in the action shall be allowed to testify on his or her own behalf to any conversation with the deceased *** or to any event which took place in the presence of the deceased ***, except in the following circumstances:
>
> (a) If any person testifies on behalf of the representative to any conversation with the deceased *** or to any event which took place in the presence of the deceased ***, any adverse party or interested person, if otherwise competent, may testify concerning the same conversation or event." 735 ILCS 5/8-201 (West 2006).

Our supreme court has explained that the Act serves two purposes: (1) protecting decedents' estates from fraudulent claims; and (2) equalizing the position of the parties in regard to the giving of testimony. *Gunn v. Sobucki*, 216 Ill. 2d 602, 609 (2005), citing *Hoem v. Zia*, 159 Ill. 2d 193, 201 (1994). The primary purpose of the Act is to preserve fundamental fairness. *Beard*, 379 Ill. App. 3d at 13. To ensure this fairness and preclude the presentation of a one-

sided picture of an event or conversation, if any person testifies on behalf of the decedent's representative to a conversation or an event involving the decedent, then the defendant may also testify on the same subject matter. See *In re Estate of Jones,* 159 Ill. App. 3d 377, 385 (1987).

First, plaintiff argues that the trial court erred by allowing Dr. Schonberg to testify that decedent was never evaluated by him in June 2000 or thereafter. Plaintiff's argument is unpersuasive. Notably, in her opening brief, after explaining the subsection (a) exception to section 8-201 of the Act, plaintiff states, "Thus, if any person testified on behalf of the representative of the deceased to such visit [*sic*], then the defendant doctor could be allowed to testify concerning the same visit."

In support of her argument, plaintiff distinguishes both *Beard v. Barron*, 379 Ill. App. 3d 1 (2005), and *Haist v. Wu,* 235 Ill. App. 3d 799 (1992), based on the fact that the plaintiff in each of those cases waived protection of the Dead-Man's Act by eliciting testimony from the defendant as an adverse witness. However, neither of those cases limits the waiver exception in the Act to situations where testimony is elicited from the defendant as an adverse witness. In fact, in *Beard*, this court also found that plaintiff opened the door to the defendant doctor's testimony that he did not find the decedent's symptom's suspect by eliciting testimony from the plaintiff's expert, who opined that the defendants violated the standard of care by failing to recognize the decedent's symptoms as indicative of a subdural bleed. *Beard*, 379 Ill. App. 3d at 15. Moreover, the exception in the statute expressly states, "[i]f *any person* testifies on behalf of the [decedent's] representative." (Emphasis added.)735 ILCS 5/8-201(a) (West 2006).

The instant case is analogous to *Hoem v. Zia*, 159 Ill. 2d 193 (1994). In *Hoem*, the plaintiff alleged that the defendants failed to diagnose and prevent the impending heart attack of

her husband, Richard Hoem, that resulted in his death in November 1988. *Hoem*, 159 Ill. 2d at 195. During the plaintiff's case-in-chief, she introduced the expert testimony of cardiologist Dr. Dan Fintel that the deceased's EKG and medical records showed clear signs of an impending heart attack. Dr. Fintel further testified that during the deceased's visit with the defendant on October 31, 1988, the defendant should have recognized that the deceased was describing angina. *Hoem,* 159 Ill. 2d at 196-197. Based on that testimony, the defendant, Dr. Zia, was allowed to testify regarding his examination of decedent on October 31, 1988, and explain why he did not suspect the decedent was suffering from angina. *Hoem,* 159 Ill. 2d at 197. Our supreme court held that the defendant's testimony fell within subsection (a) of section 8-201 of the Act and that the plaintiff waived the bar of the Act. *Hoem*, 159 Ill. 2d at 201. The court reasoned, "allowing the representative of the deceased to introduce her version of why Hoem went to Dr. Zia, without giving an equal opportunity to Dr. Zia, would not advance the policy behind the Act." *Hoem*, 159 Ill. 2d at 202. Thus, the court found it would be fundamentally unfair to deny Dr. Zia the opportunity to explain his view of what happened. *Hoem*, 159 Ill. 2d at 202.

*Malanowski v. Jabamoni*, 332 Ill. App. 3d 8 (2002), is likewise analogous. In that case, the deceased found a lump under her arm and called her gynecologist, but waited to see her until her routine scheduled appointment two weeks later. At that appointment, on July 31, 1991, the defendant, Dr. Jabamoni, advised removal of the lump if it persisted and did not schedule a follow-up examination. *Malanowski*, 332 Ill. App. 3d at 10. The deceased's cancer was thereafter diagnosed by another doctor. She died of complications of breast cancer on December 15, 1993. *Malanowski*, 332 Ill. App. 3d at 11. In *Malanowski*, this court held that the plaintiff opened the door to the defendant doctor's testimony about a conversation she had with the

deceased on July 31, 1991. *Malanowski*, 332 Ill. App. 3d at 12. Specifically, this court found that allowing the representative of the deceased, the plaintiff's expert, to introduce his version of what course of action the defendant Dr. Jabamoni recommended or failed to recommend, without giving an equal opportunity to Dr. Jabamoni, would not advance the policy behind the Act. *Malanowski*, 332 Ill. App. 3d at 13. The court referred to particular questions posed to Dr. Seltzer, the plaintiff's expert, by the plaintiff's counsel that assumed that Dr. Jabamoni failed to offer certain treatment options to the decedent. *Malanowski*, 332 Ill. App. 3d at 13.

Similarly, in the instant case, plaintiff opened the door for testimony from defendant Dr. Schonberg that he never examined decedent in June 2000 or thereafter. Several of plaintiff's witnesses testified on direct examination in plaintiff's case-in-chief, suggesting multiple occasions on which decedent had supposedly visited Dr. Schonberg.

The first witness, Robin Sanders, R.N., formerly decedent's office nurse, testified that during the spring and summer of 2000 she made an appointment for Dr. Agins to see either Dr. Schonberg or Dr. Wolff. Over defendant's objection, plaintiff was permitted to ask Nurse Sanders about conversations she had with decedent regarding his intention to see Dr. Schonberg or Dr. Wolff.

Next, plaintiff's expert physician Dr. Thomas Kron testified on direct examination in plaintiff's case-in-chief. Dr. Kron's testimony in relevant part is as follows:

"Q. Do you have an opinion as to whether it's more likely

true than not as to whether or not Dr. Schonberg did or did not see

the patient at least on one occasion in his office?

A. I think it's more likely true that he did see the patient."

Dr. Kron went on to testify that there are no notes in Dr. Schonberg's records that he ever saw the decedent. Plaintiff then asked the following question:

> "Q. Of what significance, then, is the fact that there's no note by Dr. Schonberg in the chart that he saw the patient?
>
> A. It could mean that he didn't write a note or it could mean that he didn't see the patient."

Dr. Kron further testifies, without being specific, that there was other evidence that indicates that he did see the patient and points to Mrs. Susan Agins' and, subsequent treater, Dr. Constantino's deposition testimony.

Susan Agins' own testimony also opens the door for defendant to refute the implication that he examined decedent in his office.

> "Q. Okay. During that period of time [late April on into the spring, early summer and summer of 2000] did Howard [Agins] have any conversations with you where he told you he was going to get some treatment for his nosebleeds?
>
> A. On...
>
> Q. Just did he or didn't he, did you have some conversations?
>
> A. Yes.
>
> Q. Okay. Did he tell you who he was going to see for the nosebleeds?
>
> A. Yes."

The following questioning was permitted over defendant's objection:

"Q. How many times did Howard – Strike that. Who did he tell you he was going to see for his nosebleeds?

A. Dr. Wolff and Dr. Schonberg.

Q. How many times – going through spring and summer of 2000, did Howard tell you – how many different times did he tell you he was going to see Dr. Wolff and Dr. Schonberg for his nosebleeds?

A. Three to four times.

Q. Did you have occasion to observe Howard when he would come home or when you would see him regarding – I don't know how to phrase it. You remember seeing Howard during the spring and summer when it appeared he had something in his nose?

A. Yes.

Q. Okay. Could you describe to the ladies and gentlemen what you saw as far as his nose?

A. Well, it was post-op care. He had a packing in his nose. I couldn't tell whether it was gauze or cotton, but there was some sort of packing in his nose. He also had a prescription for antibiotics, Afrin and I believe Nasacort.

\* \* \*

Q. In relation to the times that Howard told you he was going to see Dr. Wolff and Dr. Schonberg for the nose, when did you see these–these three or four occasions in relation to when he told you, when did you see packing in his nose?

A. Well, the times when he would come home after–I would witness it after that.

Q. He told you that?

A. Yes.

Q. After he told you he was going to see Dr. Schonberg and Dr. Wolff, you then saw that packing in the nose?

A. Yes.

Q. And this was during the spring and summer? I mean it wasn't all one day?

A. Late spring, mid summer."

Based on the foregoing testimony, we find that fairness permits Dr. Schonberg's testimony that he did not have the opportunity to evaluate decedent since decedent did not come to him for an examination in June 2000 or thereafter as suggested in the testimony of Nurse Sanders, Susan Agins, and Dr. Kron. The implication from the foregoing testimony, similar to the situation in *Malanowski*, is that Dr. Schonberg had the opportunity to evaluate decedent but did not examine him or did not do all that he could to follow-up with decedent. Under these circumstances, this court, like the court in *Hoem* and *Malanowski*, finds it would be fundamentally unfair to deny Dr. Schonberg an opportunity to explain what happened. Left unchallenged, plaintiff's version, *i.e.*,

that Dr. Schonberg examined decedent on several occasions over the course of several months and failed to diagnose and treat the cancer, would have remained with the jury as the only testimony regarding decedent's supposed visits to Dr. Schonberg. Accordingly, the trial court did not abuse its discretion by permitting Dr. Schonberg's testimony. To hold otherwise would not serve the intended purpose of the Act, namely to preclude a one-sided picture of the events. See *Jones,* 159 Ill. App. 3d at 385.

Compare this case, where plaintiff has introduced testimony regarding decedent's supposed visits with defendant Dr. Schonberg and a notation in his office chart, to the situation in *Theofanis v. Sarrafi*, 339 Ill. App. 3d 460 (2003). In *Theofanis*, this court found it was reversible error for the trial court to allow the admission of the defendant physician's notes of his conversations with the patient, which were offered by the defendant to prove the deceased's resistance to all his instructions. In *Theofanis*, the testimony of Dr. Sarrafi regarding his notes was improperly admitted because the plaintiffs had not introduced any evidence about that conversation. *Theofanis*, 339 Ill. App. 3d at 478. The court noted that the plaintiffs' later examination of their expert concerning Sarrafi's notes, brought in response to Sarrafi's improper testimony, did not serve to waive retrospectively the timely objection to Sarrafi's prior testimony. *Theofanis*, 339 Ill. App. 3d at 478.

Plaintiff also argues in her appeal that the trial court erred in finding a waiver of the Dead-Man's Act and allowing Dr. Schonberg to testify regarding conversations related to the May 31, 2000, note in the office chart. As with the previous argument, we find that plaintiff opened the door to the testimony and that the trial court did not abuse its discretion by allowing Dr. Schonberg to explain his note.

11

Specifically, Susan Cornis, defendant Dr. Schonberg's office manager, testified in plaintiff's case that Dr. Schonberg told her to make the May 31, 2000, notation in the chart. She further testified that the first line of the notation was in her handwriting but that Dr. Schonberg wrote in "and Avelox" himself on a different day. Plaintiff infers from this testimony that decedent had to be at the office on May 31, 2000. Additionally, the testimony of plaintiff's expert Dr. Kron elicited by plaintiff's counsel that Dr. Schonberg's follow-up with decedent consisted of him giving decedent some samples of an antibiotic and a cortisone-type nasal spray also opened the door to Dr. Schonberg explaining the circumstances surrounding the notation in the chart. Dr. Kron testified that the decedent must have gone to Dr. Schonberg's office on May 31, 2000, to obtain the medication. From this statement, it may be argued that Dr. Kron was merely interpreting the note for the benefit of the jury. However, we find that, as in *Hoem*, Dr. Kron "put his gloss on the notes" by concluding that decedent must have seen Dr. Schonberg in his office to obtain the medication. See *Hoem,* 159 Ill. 2d at 201. Therefore, we find that the trial court did not abuse its discretion in permitting Dr. Schonberg to explain the circumstances surrounding the May 31, 2000, note in his chart.

Lastly, plaintiff argues that the trial court erred by barring Mrs. Susan Agins from testifying that the reason she and decedent went to see Dr. Toriumi in early October 2000 was that Dr. Schonberg had informed decedent that it was not necessary to immediately treat the polyp and it could wait until after the Thanksgiving holiday. After hearing Susan Agins' testimony during an offer of proof, the trial court ruled that the proffered testimony was inadmissible hearsay. Plaintiff contends that the testimony should have been admitted under an exception to the rule against hearsay that allows a declaration of state of mind or emotion to

prove subsequent conduct.  Essentially, plaintiff argues that the testimony was not being offered for the truth of the matter asserted, *i.e.*, that Dr. Schonberg was willing to delay treatment until after the holiday; rather, plaintiff asserts that the testimony was merely being offered to show why decedent went to Dr. Toriumi.

Hearsay is an out-of-court statement offered for the truth of the matter asserted. *Laughlin v. France,* 241 Ill. App. 3d 185, 192 (1993).  Generally, hearsay is inadmissible unless it falls within an exception to the rule. *People v. Sanchez,* 131 Ill. 2d 417, 423 (1989).  Appellate courts review evidentiary rulings for abuse of discretion. *Gunn v. Sobucki,* 216 Ill. 2d 602, 609 (2005).

In the instant case, we find that the trial court did not abuse its discretion by prohibiting Mrs. Agins from testifying that the reason she and her late husband went to Dr. Toriumi was that decedent told her that Dr. Schonberg told him treatment of the polyp could wait until after Thanksgiving and that she thought that was too long to wait.  Considering plaintiff's theory of negligence is that Dr. Schonberg delayed evaluation, diagnosis, and treatment of decedent's malignant polyp, the only plausible purpose for offering such testimony is to show the "truth of the matter asserted," that Dr. Schonberg told decedent he did not need to treat the polyp right away and that it could wait a few more weeks.  Thus, the statement is hearsay. See *Laughlin,* 241 Ill. App. 3d at 192.

Moreover, the proposed testimony does not meet the requirements of the "state of mind" exception.  Statements which indicate a declarant's state of mind are admissible as exceptions to the hearsay rule when the declarant is unavailable and it is reasonably probable that the statements are truthful. *Laughlin,* 241 Ill. App. 3d at 192, citing *People v. Floyd*, 103 Ill. 2d 541, 546 (1984).  The testimony as presented in the offer of proof described Mrs. Agins' reason for

wanting to go to Dr. Toriumi. In other words, her state of mind, not that of the declarant. Additionally, there is no indication in the record that it is reasonably probable that the statements are truthful. Throughout the trial it was defendant Dr. Schonberg's contention that he never had the opportunity to evaluate decedent and there is nothing in his records to indicate that he informed decedent that treatment could wait until after Thanksgiving. Also, Dr. Toriumi testified that his evaluation of decedent was a primary evaluation and not a second opinion. Based on the foregoing, the trial court did not abuse its discretion in prohibiting the proffered testimony from Mrs. Agins as a violation of the rule against hearsay.

## CONCLUSION

In conclusion, we hold that plaintiff waived the protection of the Dead-Man's Act by eliciting testimony from her own witnesses regarding the conversations and events at issue and, thus, the trial court did not abuse its discretion by allowing Dr. Schonberg to refute that testimony. It would be fundamentally unfair in this situation to deny Dr. Schonberg the opportunity to explain his version of events. We also find that the trial court properly excluded the hearsay testimony offered by plaintiff.

Affirmed.

MURPHY, P.J., and QUINN, J., concur.